FRANKLIN D. SMITH v. EMIL MUNCH and Another.[1]

June 23, 1896.

Nos. 10,114—(306).

## Malicious Prosecution—Probable Cause.

In an action for malicious prosecution, *held* that, upon the undisputed facts, the trial court should have held as a matter of law that the defendant had "probable cause" for instituting the prosecution.

## Same—Province of Court and Jury.

What facts, and whether particular facts, constitute probable cause, is a question of law for the court; but what facts exist in a particular case, when there is a dispute in reference to them, is a question for the jury,— following former decisions.

## Master's Liability for False Imprisonment by Servant—Furtherance of Business—Scope of Agency.

The superintendent of a manufacturing corporation had general charge of the premises, of the business, and of the employés while at work. While plaintiff was on the premises, he caused his arrest without any warrant on a charge of disorderly conduct, committed several hours before, in unlawfully entering the factory, and attempting by threats to induce the employés to quit work. This act on part of the superintendent was done, not for his own interest or benefit, but in furtherance of the interest of the corporation by protecting its premises and employés from trespassers and intruders. *Held*, that the facts brought the case within the general rule that a master is responsible for the torts of his servant done with a view to the furtherance of the master's business, whether the same be done negligently or willfully, but within the scope of his agency; and that the corporation was liable for the act of its superintendent in directing the unlawful arrest.

## Same—Excess of Authority—Disobedience of Instructions.

The fact that the superintendent may have exceeded his actual authority, or even disobeyed his express instructions, does not alter the rule.

Separate appeals by defendants from an order of the district court for Ramsey county, Brill, J., denying motions for a new trial. Affirmed in part and reversed in part.

*Lewis & Hallam*, for appellants.

*Francis H. Clarke*, for respondent.

[1] Reported in 68 N. W. 19.

MITCHELL, J. The complaint stated three causes of action against the defendants, one for false imprisonment and two for malicious prosecution, viz. for assault and battery, and for disorderly conduct. There being no evidence to connect either of the defendants with the prosecution of plaintiff for assault and battery, that cause of action was properly dismissed by the court, and hence need not be considered.

The record discloses the following facts: The defendant Munch was the superintendent of the shops and yard of the Bohn Manufacturing Company, his duties being to look after the workmen and the work, and see to it that the business was properly attended to. On July 12, 1895, about 25 of the employés (mostly young men and boys) in the box factory "struck," and quit work. Soon afterwards, and on the same day, plaintiff also went out, because he had been ordered to do work which one of the strikers had been doing. New hands were employed to take the place of the strikers. The next day, shortly before the noon hour, about 20 of these strikers congregated in the vicinity of the factory evidently waiting for 12 o'clock, in order to gain entrance into the building for the purpose of inducing the new employés to quit work, either by threats or persuasion. Plaintiff, in company with one of the strikers named Milander, in whose company he had been for most of the day, also came there, and either joined the crowd or waited in close proximity to it until the 12 o'clock whistle blew. Plaintiff's statement is that he went there at the request of his mother, to tell another boy who was working in the shop "not to go out on a strike." Milander's story is that his purpose in going into the factory was "to see some of the old employés, and see what they thought of the new boys who started." When the doors of the factory opened at 12 o'clock, the entire crowd, including plaintiff and Milander, entered the building. Considerable "fuss" ensued. One of the strikers assaulted a young boy who was employed in the shop. The term "scab" was applied to those who had taken the place of the strikers. Persuasion and some threats were used to induce the employés to quit. Some who had struck, and then gone back to work, were upbraided for doing so. Witnesses who claimed to have been eyewitnesses testified that the plaintiff intimidated one of the employés by swearing at him, and saying "if he did not get out of the factory he would fix him after

five o'clock," and called the boy a "scab." Plaintiff himself admits, as also does his friend Milander, that he asked the boy "what he wanted to go out on the strike for, if he wanted to go back again." There was also evidence tending to show that, while the crowd was waiting outside, the plaintiff urged some small boys to strike one of the young employés who happened to come outside of the factory.

Defendant Munch was not present during any part of this time, but when he returned late in the afternoon he was informed of the trouble which had occurred during his absence, and was informed by employés who professed to be eyewitnesses, and who, so far as appears, were reliable persons, that plaintiff had committed substantially the acts as above stated. Munch testified that he honestly believed that these parties told the truth, and there is no direct evidence, and, so far as we can discover, no circumstantial evidence, tending to show that he did not believe these statements, or that he did not have reasonable ground for so doing. After these communications had been made to Munch, and about 5 o'clock in the afternoon, plaintiff, his friend Milander, and some others of the strikers, again came to the factory, as they testify, to get pay due them for work. Thereupon Munch called in a policeman, and directed him to arrest the plaintiff and one other of the ex-employés, for participating in the disturbance at noon. He gave this direction without having made any sworn complaint, or having procured any warrant for their arrest. The policeman obeyed the directions, arrested the plaintiff and the other boy, and required them to accompany him to the police station, where plaintiff was required to remain (but without being locked up) for about an hour and a half, until Milander went to plaintiff's home and obtained $15, which he deposited as security for his appearance on Monday morning; it then being Saturday evening. Plaintiff appeared in the police court on Monday morning, as also did Munch, with some witnesses from the factory. A formal complaint under the city ordinance was then made against plaintiff for disorderly conduct, which was sworn to by the boy who had been assaulted during the disturbance on Saturday noon. The case was adjourned for a day or two, when a trial was had, in which, after hearing the evidence on both sides, the court found the plaintiff not guilty.

On the trial of the present action the jury found a verdict against both defendants for $2,000, viz. $1,000 on each cause of action. The

court ordered a new trial unless the plaintiff would stipulate to reduce the verdict on the first cause of action (false imprisonment) to $400, and on the second (malicious prosecution) to $300; or $700 in all. The plaintiff having consented to this reduction, defendants' motion for a new trial was denied, and from that order they appealed.

Defendants make the point that there was no evidence that defendant Munch caused, procured, or instigated the prosecution of the plaintiff for disorderly conduct; but we are of opinion that there was ample evidence to justify the jury in finding that the boy made the complaint at the instance of Munch. The point is also made by the Bohn Manufacturing Company that there was no evidence that it was in any way connected with instituting the prosecution, or that Munch, in doing so, was acting within the scope of his agency; but we do not find it necessary to consider that question. We are of opinion that the court erred in submitting this cause of action to the jury at all, for the reason that the plaintiff had wholly failed to prove that the prosecution was instituted without probable cause.

Many courts and authors have attempted to define what will constitute probable cause. This court has approved the definition laid down in Munns v. Dupont, 3 Wash. C. C. 31, Fed. Cas. No. 9,926, and, with certain qualifications or explanations, that given in Hilliard, Torts. Cole v. Curtis, 16 Minn. 161 (182). As to the prosecution of civil actions, see, also, Burton v. St. Paul, M. & M. Ry. Co., 33 Minn. 189, 22 N. W. 300. Perhaps as good a definition as can be given is that "probable cause" is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the offense for which he was prosecuted. 14 Am. & Eng. Enc. Law, 24, and cases cited. It is not necessary that the facts upon which the prosecutor acts shall be true. It is enough if he believed them to be true, and had reasonable ground for so believing. Neither is it necessary that he should know, or suppose he knows, of his own knowledge, the truth of the facts upon which he acts. He may act upon communications made to him by others if he has reasonable ground for believing, and does believe, that the communications are true. If every man was bound, under the penalty of heavy damages, to ascertain before he commences a prosecution that

he has such evidence as will secure conviction, few prosecutions would be set on foot. The law, therefore, protects the prosecutor if he have reasonable and probable ground for the prosecution, that is, have such ground as would induce a man of ordinary prudence and discretion to believe in the guilt, and to expect the conviction, of the person prosecuted, and if he acts in good faith on such belief and expectation.

It is also the settled law that what facts, and whether particular facts, constitute probable cause, is a question of law for the court; but what facts exist in a particular case, when there is a dispute in reference to them, is a question exclusively for the jury. Cole v. Curtis, supra; Burton v. St. Paul, M. & M. Ry. Co., supra; Moore v. Northern Pac. R. Co., 37 Minn. 147, 33 N. W. 334; Gilbertson v. Fuller, 40 Minn. 413, 42 N. W. 203. If the plaintiff committed the acts, under the circumstances which defendant Munch was informed he did, there is no doubt that he was guilty of disorderly conduct within the meaning of the city ordinance. The evidence is uncontradicted that these alleged acts of plaintiff were communicated to Munch, and that he believed them to be true, and acted upon them in that belief. There was, as already suggested, no evidence, either direct or circumstantial, to the contrary. Upon this state of the evidence the court ought not to have submitted the third cause of action to the jury, but should have instructed them, as a matter of law, that the undisputed facts constituted probable cause, and that defendants were not liable on that cause of action.

On the other cause of action (unlawful imprisonment) the defendant Munch is undoubtedly liable in some amount for directing the illegal arrest of plaintiff without any warrant, for plaintiff was not then in the commission of any disorderly conduct. The misconduct of which he was charged, and of which Munch had been informed, had been committed, if at all, at least five hours before.

The question remains, is the Bohn Manufacturing Company liable for the wrongful act of Munch? Munch was its general superintendent, having charge of its premises, its business, and its employés while performing their work. This duty impliedly included the protection of the premises and property from trespassers, and the protection of the employés, while at work, from the interference of intruders. The act of Munch in directing plaintiff's arrest was

evidently not done in his own interest, or for his own benefit, but in the furtherance of the interest of the company by protecting its property and employés from wrongdoers. While there is much conflict in the decisions as to when a master is liable for the intentional torts of his servant, yet the tendency of the modern authorities is to extend the liability of the master in such cases; and the general rule may now be said to be that a master is responsible for the torts of his servant done with a view to the furtherance of the master's business, whether the same be done negligently or willfully, but within the scope of his agency. The fact that the servant, in committing the tort, may have exceeded his actual authority, or even disobeyed his express instructions, does not alter the rule. We think that the facts of the present case bring it within this rule.

The verdict of the jury was so excessive as to clearly indicate that it must have been the result of passion or prejudice, or, at least, that it was not rendered in a judicial frame of mind. The explanations of plaintiff and of his companion as to their reasons for going to the factory on this occasion are somewhat suspicious, to say the least of them. But, conceding that plaintiff went there for a proper purpose, he must have known, when he arrived, that the crowd of strikers was there for no proper or lawful purpose, and yet, so far at least as external appearances went, he identified himself with them, and accompanied them into the factory, where neither they nor he had any business to go, and when he must have known that the others were not going in for any lawful purpose. Under such circumstances plaintiff is certainly not entitled to any very large allowance of damages for injury to his feelings caused by his subsequent arrest. Furthermore, there is no evidence to justify the conclusion that Munch was actuated by any personal malice. He had "probable cause" for securing plaintiff's arrest if he had done so in a lawful way. His wrongful act consisted merely in ordering plaintiff's arrest without a warrant. Plaintiff's pecuniary injury was very small. But, under the circumstances, the damages ought not to be strictly limited to what would compensate mere pecuniary loss. Defendant Munch was bound to know that he had no right to order plaintiff's arrest without a warrant. The liberty of the citizen is a right not to be lightly invaded, and the penalty for any invasion of it should be sufficiently large to be a lesson to the wrongdoer that such an act cannot be committed with impunity.

While $400 is larger than we think ought to have been awarded, yet as part of this will be absorbed by the taxable costs of this appeal, and as a new trial must, on the admitted facts, result in a verdict against the defendants for some amount, we have concluded to affirm the order appealed from as to the cause of action for false imprisonment, and reverse it as to the cause of action for malicious prosecution. So ordered.