LOUIS E. LARSON v. FIDELITY MUTUAL LIFE ASSOCIATION.[1]

January 6, 1898.

Nos. 10,876—(208).

**Malicious Prosecution—Unauthorized Act of Agent of Insurance Company—Liability of Company to Plaintiff.**

The defendant appointed one C. its agent for the district of Minnesota for the purpose of procuring, in person and through agents (to be ap-

[1] Reported in 73 N. W. 711.

pointed by himself), applications for insurance on the lives of individuals, and forwarding the same to the company for approval or disapproval, and, if approved and policies be issued thereon, collecting and paying over the dues or premiums to the company. It was expressly provided that he should be responsible for the acts and doings of such agents as he should appoint. Maliciously and without probable cause, he procured the arrest and imprisonment of one of the agents of his own appointment for the crime of embezzling the funds of the defendant. The defendant never authorized, participated in or ratified such arrest and imprisonment. *Held*, that the defendant was not liable.

**Same—Principal and Agent—Tort Committed for Purpose Personal to Agent.**

A principal is liable to third persons for the torts of his agent when committed in the course and within the scope of the agency, although the principal never authorized, participated in or ratified the tort; but he is not liable where the tortious act was committed, not in furtherance of the principal's business, but for a purpose personal to the agent himself.

**Same.**

Even if the act of the agent might otherwise have been in the course and within the scope of his agency, yet, as he had a purpose personal to himself because of his liability to the defendant for the acts of his subagent, it must be presumed that he instituted the criminal proceedings to subserve that purpose.

Action in the district court for Hennepin county to recover $10,000 for malicious prosecution and false imprisonment. The case was tried before Smith, J., and a jury which rendered a verdict in favor of plaintiff for $300, upon which judgment was entered. From this judgment defendant association appealed. Reversed.

*Haynes & Chase,* for appellant.

The implied authority conferred upon an agent is necessarily restricted to the transactions pertaining to the business of the principal in which the agent engages and, if he exceeds that authority, the principal is not bound. Beebe v. Equitable, 76 Iowa, 129; Stewart v. Woodward, 50 Vt. 78. Even if Crawford, in instituting criminal proceedings against the plaintiff, was acting within the scope of the authority delegated to him to collect and forward premiums, and he instituted such proceedings for the purpose of collecting a debt due the company, and therefore in furtherance of

the company's interest, still the company would not be liable for any illegal acts of his in connection with the collection not expressly authorized. Murrey v. Kelso, 10 Wash. 47; Callahan v. Hyland, 59 Ill. App. 347; Carter v. Howe, 51 Md. 290; Tolchester v. Steinmeier, 72 Md. 313; Central v. Brewer, 78 Md. 394; Kirk v. Garrett, 84 Md. 383; President v. Green, 86 Md. 161; Cleveland v. Koch, 37 Ill. App. 595; Dally v. Young, 3 Ill. App. 39; Govaski v. Downey, 100 Mich. 429; Pressley v. Mobile, 15 Fed. 199; Mali v. Lord, 39 N. Y. 381; Morton v. Metropolitan, 34 Hun, 366; Norman v. Manciette, 18 Fed. Cases, 307; Allen v. London, L. R. 6 Q. B. 65. The evidence shows that Crawford instituted criminal proceedings, not to collect a debt due the company nor in furtherance of its interest, but to collect a debt due himself and for his own individual benefit.

*Smith, Pulliam & Smith*, for respondent.

Smith v. Munch, 65 Minn. 256; Brazil v. Peterson, 44 Minn. 212; Potulni v. Saunders, 37 Minn. 517; Mulvehill v. Bates, 31 Minn. 364; Ellegard v. Ackland, 43 Minn. 352; Mozier v. St. Paul, 31 Minn. 351; Cooley, Torts, 119–121, among other authorities, were cited.

MITCHELL, J.

This was an action for malicious prosecution and false imprisonment against the defendant association and its co-defendant and agent, Crawford. The prosecution which resulted in plaintiff's arrest and imprisonment was instituted by the complaint of Crawford charging the plaintiff with the crime of embezzling $100, the money and property of the association. It is conceded that the plaintiff established a cause of action against Crawford, the only question raised by the appeal being whether, on the facts, the association was liable for the acts of its agent.

As all that bears on this question might have been included in a comparatively short bill of exceptions, it is to be regretted that we have been compelled to examine a record of 260 pages with but little aid from counsel by referring us to the places where the material evidence is to be found.

There is practically no conflict in the evidence. The appellant, a

foreign life insurance company with its general offices in the city of Philadelphia, appointed Crawford its managing agent for the district of Minnesota, for the purpose of procuring, in person and through agents, applications for insurance on the lives of individuals, and forwarding the same to the association for approval or disapproval, and, if approved and policies be issued thereon, collecting and forthwith paying over such dues or premiums to the association as may be specified in the receipt accompanying such policies. In the appointment of agents he was to require them to execute the regular form of contract furnished by the association to its managing agents for that purpose. It was expressly provided that he should be responsible for the acts and doings of such agents. In the execution of this agency Crawford appointed plaintiff agent for Polk county, for the purpose of soliciting and procuring applications from individuals for insurance in the defendant association. Plaintiff accepted the agency and executed to the association a bond, with sureties, conditioned for the faithful discharge of his duties.

While in the letters of appointment (Exhibit B), Crawford designates plaintiff as "my agent," and while plaintiff was under the direction and control of Crawford, who was responsible to the association for his acts, yet, as his appointment was authorized by the association, there can be no doubt that he was the agent of the association, so that it would be liable for his acts performed within the scope of his agency; and money which he collected for premiums on policies issued would be the money of the association, and not of Crawford individually. Plaintiff made his reports and accounted to Crawford, who in turn reported and accounted to the company.

Crawford, claiming that plaintiff had appropriated to his own use moneys collected on premiums for policies issued, made the complaint already referred to, upon which a warrant was issued, under which plaintiff was arrested and imprisoned. While he was thus in custody plaintiff, under duress and for the purpose of obtaining his liberty, as he claims, induced the sureties on his bond to pay the amount of his alleged "shortage" to Crawford, who

subsequently and in the regular course of business accounted for and paid it over to the association.

There is no evidence that the association, or any of its general officers, ever authorized, instigated, or even knew of, the institution of criminal proceedings against the plaintiff, or ever in any way ratified them. Neither was there any evidence that the association had, by any prior course of conduct, clothed Crawford with either apparent or implied authority to institute such proceedings. In view of the confident views of the learned counsel for plaintiff to the contrary, we have carefully examined the entire record with that question in mind. Munckton was merely Crawford's "field superintendent," appointed by himself. Moreover, there is no evidence that he in any way participated in the institution or prosecution of the proceedings. Cormany was merely the personal attorney of Crawford, employed by him, and not by the association. Stadden was the association's "supervisor of agents," his business being

"To develop territory, to employ agents, to assist managers in employing agents, to help them develop those agents working with them, and a general supervision of the agencies in that way."

It appears from the evidence that, being on a tour of inspection in this part of the country, while in Crookston Stadden interviewed plaintiff as to the business he had done as agent, and as to the state of his accounts, and subsequently advised Crawford that his affairs were not in a satisfactory condition, that he had made contradictory and false statements, and that he (Stadden) believed he was a thief or a scoundrel, and urged the importance of securing an early settlement with him, and closing up the business of his agency. But there is no evidence that he advised or suggested, or in any way aided or abetted, the institution of these criminal proceedings against the plaintiff, or even knew that Crawford intended to institute them. The only fact relied on as amounting to subsequent ratification is that the association received and accepted from Crawford the money which the latter secured from the sureties on plaintiff's bond. But there is not a particle of evidence that the association, or any of its general officers, even knew that

plaintiff had been arrested. The money was, so far as appears, transmitted by Crawford in the usual and ordinary course of business. It was money for which Crawford himself was, under his contract of agency, liable to the association, whether he succeeded in collecting it from plaintiff or not.

Hence, if the association is liable at all for the acts of Crawford in instituting these criminal proceedings, it must be on the ground that the principal is liable to third persons for the torts of his agents when committed in the course and within the scope of the agency, although the principal neither authorized, participated in nor ratified the tortious act. This court has recognized this rule as enlarged and extended by the general trend of modern decisions. Smith v. Munch, 65 Minn. 256, 68 N. W. 19. It is also now undoubtedly the law that corporations are liable to the same extent as natural persons for the torts of their agents. It is also true that, as corporations can act only through agents, who have generally a liberal discretion, the courts are inclined, in determining whether an act is "within the scope of the agency," to hold the corporations liable for all acts within the most extensive range of the power of the agents.

But, while most of the authorities agree on the statement of the rule, difficult questions often arise in its application to particular cases, particularly as to whether the act was "within the scope of the agency." It is elementary that, beyond the scope of his employment, a servant is as much a stranger to his master as any third person. Hence, to render the master liable, the act must have been committed in the course and within the scope of the agency, or, as it is sometimes expressed, in furtherance of the master's business, and not for a purpose personal to himself. The nature and character of the agency is the decisive test as to whether a particular act is within its scope. For example, where a detective is employed to arrest trespassers on property, his act in making an unlawful arrest would be within the scope of his agency. So, in Smith v. Munch, supra, where a superintendent had charge of the premises and of the employees, with power to protect both from wrongdoers and trespassers, his act in directing the arrest of an intruder, when done in the interest of his master and not for a purpose personal to

himself, was held to be within the scope of his agency. If the same act had been done by a mere clerk in the office, without authority from the master, such an act would hardly have been claimed to be within the scope of his agency.

When we consider the nature of Crawford's agency, it is more than doubtful whether, under any of the authorities, the institution of criminal proceedings, not authorized by the association, against embezzling subagents would, under any circumstances, be within the scope of his agency. But for the institution of civil proceedings to collect money claimed to be due his principal doubtless would be. Theoretically, at least, criminal proceedings are for the purpose of punishing a public offense, and not for the purpose of collecting debts. But, even conceding that the association would otherwise have been liable, the fact that, because of his liability as agent to it for the act of plaintiff, Crawford had a purpose personal to himself to subserve in instituting these proceedings is, in our judgment, conclusive against plaintiff's right to recover. All the authorities agree that if the act is done, not in the furtherance of the master's business, but for a purpose personal to the servant himself, the master is not liable. In this case Crawford had a much greater, as well as more direct, interest in the prosecution of plaintiff than had the association. It was really a matter of no importance to the association whether plaintiff ever paid what he owed, for Crawford was personally liable to it for the amount. If, in order to protect himself, he could, on the responsibility of his principal, resort to criminal proceedings, there would be the greatest possible inducement for him to abuse the process of the law. Neither is it permissible to speculate whether he instituted these proceedings in furtherance of his principal's business or for a purpose personal to himself, or to assume that he may have been actuated by both motives. Having this interest of his own to subserve, it must be conclusively presumed that he instituted the proceedings for that purpose.

Judgment reversed.