NICKOLAI MUNDAL v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

April 22, 1904.

Nos. 13,755—(6).[2]

**Malicious Prosecution.**

In an action for malicious prosecution, it is *held* that, upon the evidence, it was a question of fact for the jury whether the defendant instituted the prosecution by its agent, whether there was a want of probable cause for the prosecution, and whether it was done maliciously, or in good faith on the advice of the county attorney.

**Evidence.**

The court did not err in its rulings as to the admission of evidence, or in its instructions to the jury.

After Reargument, July 15, 1904.

**Evidence.**

The evidence herein was legally insufficient to justify a verdict to the effect that the prosecution of plaintiff was instituted without probable cause and maliciously.

Action in the district court for Freeborn county to recover $6,300 damages for the alleged false imprisonment and malicious prosecution of plaintiff on the criminal charge of placing obstructions upon the track of defendant's railway. The case was tried before Kingsley, J., and a jury, which rendered a verdict in favor of plaintiff for $1,000. From an order denying a motion for judgment notwithstanding the verdict

---

[1] Reported in 99 N. W. 273; 100 N. W. 363.        [2] April, 1904, term.

or for a new trial, defendant appealed.   Reversed on rehearing and judgment ordered for defendant.

*W. S. Hammond, H. C. Carlson,* and *Albert E. Clarke,* for appellant.

The question as to whether there was probable cause for the prosecution should not have been submitted to the jury.   Probable cause is a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.   Cole v. Curtis, 16 Minn. 161 (182); Casey v. Sevatson, 30 Minn. 516; Eggett v. Allen, 119 Wis. 625.   The question as to what constitutes probable cause is a question of law for the court.   Moore v. Northern Pac. R. Co., 37 Minn. 147; Gilbertson v. Fuller, 40 Minn. 413; Stewart v. Sonneborn, 98 U. S. 192, 194; Smith v. Munch, 65 Minn. 256; Bechel v. Express Co. (Neb.) 91 N. W. 854.

The fact that the county attorney, with all the facts before him, approved and instituted this prosecution, is conclusive upon the question of probable cause.   Genevey v. Edwards, 55 Minn. 88.   The burden is upon the plaintiff to show want of probable cause.   Burton v. St. Paul, M. & M. Ry. Co., 33 Minn. 189, 191; Olson v. Tvete, 46 Minn. 225.   The final acquittal of the defendant is no evidence of want of probable cause.   Cullen v. Hanisch, 114 Wis. 24; Ross v. Hixon (46 Kan. 550) 26 Am. St. Rep. 155, note.   Discharge of the prisoner by the examining magistrate is not prima facie evidence of want of probable cause.   Cole v. Curtis, supra; Chapman v. Dodd, 10 Minn. 277 (350).   The waiver of preliminary examination raises a presumption of probable cause.   Hess v. Oregon, 31 Ore. 503; Brady v. Stiltner, 40 W. Va. 289; Barber v. Scott, 92 Iowa, 52.

*Morgan & Meighen* and *H. H. Dunn,* for respondent.

START C. J.[2]

This is an action to recover damages for an alleged malicious prosecution of the plaintiff by the defendant.   Verdict for the plaintiff for $1,000, and the defendant appealed from an order denying its motion for judgment notwithstanding the verdict, or for a new trial.

1. The first question to be considered is the contention of the defend-

[2] DOUGLAS, J., ill, took no part.

ant that there is no evidence in the record that the defendant ever instituted or authorized the prosecution of the plaintiff. On Sunday afternoon, April 30, 1899, two oak ties were found upon the defendant's railway track, some three and one-half miles north of Albert Lea, by the engineer of a south-bound freight train, who reported the fact on his arrival at Albert Lea to the defendant's general superintendent, Mr. Clarke. The superintendent directed Mr. Ehrlichman, a temporary employee of the defendant, to investigate the matter, and, if he found any evidence to connect any person with the offense, to lay the case before the county attorney of the county of Freeborn. Pursuant to such instructions, Mr. Ehrlichman proceeded to investigate as to who placed the obstructions on the track. The result of his investigation was that on the following May 19 he appeared before the county attorney, who drew a complaint charging the plaintiff and another person (Osmundson) with placing the obstructions upon the track. This complaint was sworn to by Ehrlichman, and filed with the city justice, who issued a warrant by virtue of which the plaintiff was arrested, and such further proceedings had that he waived examination before the justice, and was committed to the county jail to await the action of the grand jury, where he remained for more than six months, when he was released on his own recognizance. The grand jury investigated the charge, but failed to find any indictment against the plaintiff, and he was discharged by the court.

It appears from the uncontradicted evidence of the county attorney that Ehrlichman said to him that he had come for the purpose of making a complaint against the plaintiff and Osmundson. The next day after plaintiff's arrest, Ehrlichman reported in writing to the superintendent to the effect that, pursuant to his instructions, he had investigated the case, resulting in the county attorney drawing a complaint, the issuing of a warrant, and the arrest of the plaintiff. And ten days after the arrest of the plaintiff, the county attorney wrote to the superintendent, advising him that, through the efforts of his agents, Ehrlichman and Henderson, the plaintiff had been arrested and held to the grand jury, and further added:

> After Mr. Mundal had been arrested your agents put him through the "mill" and secured a confession from him of a suf-

ficient nature to have bound Mundal over to the grand jury but also to implicate the other defendant. I have congratulated both Mr. Ehrlichman and Mr. Henderson for their work and success in the matter, and also congratulate you on having such men in your service.

It does not appear from the record that the superintendent ever in any manner repudiated the acts of Ehrlichman so communicated to him. The plaintiff testified that Ehrlichman showed him a letter from the superintendent instructing him to arrest the plaintiff. This evidence was contradicted by the defendant.

Upon the evidence and facts to which we have referred, we are of the opinion that it was a question for the jury whether Ehrlichman in fact instituted the prosecution, and whether his acts in the premises were authorized by the superintendent.

The question, however, remains whether the superintendent was himself authorized to institute the prosecution on behalf of the defendant. He testified that he had nothing to do with criminal prosecutions, and no authority to do anything more than direct that the case be laid before the county attorney; that he never gave any other directions to any one; and, further, that Ehrlichman had no authority to make complaint or prosecute any charge of any kind against the plaintiff or any other person. This evidence was not directly contradicted, but it is to be noted that it is largely the superintendent's conclusion in the premises, and, further, that there is no suggestion in the evidence that any other agent or officer of the defendant was authorized to cause prosecutions to be instituted against parties committing criminal offenses against the defendant. But there was evidence tending to show that the superintendent had complete charge of the movements of all trains and of the whole transportation department; that obstructions placed upon the track would be an offense against his department; and that in such a case he was authorized to take the matter up on his own motion, and use his discretion as to what should be done. Again, the evidence justifies the conclusion that neither the superintendent nor Ehrlichman was acting in the matter of the prosecution of the plaintiff in any personal or private capacity, but both assumed to act for the interests of the defendant, and in furtherance of its business.

The placing of obstructions upon a railway track is a diabolical crime, imperiling, as it does, not merely large property interests, but human lives. When such a crime is committed, it is the manifest duty of the railway company, not only to itself, but to the public, to actively and vigorously assist the public officers in bringing the offenders to justice. If the superintendent in this case was not authorized to discharge this duty, what agent or officer of the defendant was? We hold that the evidence in this case was sufficient to justify the jury in finding that the defendant authorized the prosecution of the plaintiff. Smith v. Munch, 65 Minn. 256, 68 N. W. 19; Larson v. Fidelity Mut. Life Assn., 71 Minn. 106, 73 N. W. 711.

2. The defendant also urges, in effect, that the court erred in submitting the question of probable cause for the prosecution to the jury, because the evidence was practically undisputed, and shows that there was probable cause for instituting the prosecution, and that the trial court should have so held as a matter of law. The burden was upon the plaintiff to show a want of probable cause for the prosecution. What facts, and whether particular facts, constitute probable cause, is a question for the court; but what the facts are in a particular case, where the evidence is conflicting, or, if undisputed, different inferences may be fairly drawn therefrom, is a question for the jury. Probable cause does not depend on the actual state of the case in point of fact, for there may be probable cause for commencing a criminal prosecution against a party, although subsequent developments may show his absolute innocence. Any other rule would be detrimental to public interests, for few men of character or responsibility would make an effort to enforce the criminal laws of the state if they could only do so by involving themselves in expensive and vexatious litigation in case the accused was acquitted. Probable cause, then, which will legally justify a party in instituting a criminal prosecution, is such reasons, supported by facts and circumstances, as will warrant a cautious man in the belief that the accused person is guilty of the offense charged. Chapman v. Dodd, 10 Minn. 277 (350); Cole v. Curtis, 16 Minn. 161 (182); Smith v. Munch, 65 Minn. 256, 68 N. W. 19.

Now, the defendant claims that the admitted facts which Ehrlichman ascertained before making the complaint were these: Sunday afternoon, April 30, 1899, the plaintiff and Osmundson walked along

the defendant's railroad track. They were both drunk. They were going north from Bridge 92 toward and beyond Bridge 91. Between the two bridges, one of them was seen throwing ties around. They were last seen by the witnesses still on the track, going north, beyond and north of Bridge 91. On the same afternoon the first train which came along found an obstruction consisting of two ties upon the track at a point a short distance north of Bridge 91. The time between the presence of the plaintiff and Osmundson at the place where the obstruction was found and the arrival of the train was so short that when the train reached Albert Lea, but three and one-half miles from the point of obstruction, the section foreman, walking up the track to investigate, met three boys who had left the plaintiff and Osmundson at Bridge 91, and were returning to Albert Lea. If these were the facts, and all of the facts, which Ehrlichman knew or might have ascertained by a fair investigation and reasonable inquiry, there would be much force in the defendant's claim that such facts constituted, as a matter of law, probable cause for instituting the prosecution. But this statement of facts is incomplete. The obstruction was placed upon the track some half a mile north of Bridge 91, and immediately south of a curve and cut, so that a train coming from the north would come upon it suddenly, without opportunity to stop; thus clearly indicating that the obstruction was not the result of a drunken vagary, but of a deliberate purpose to wreck the train. Neither the plaintiff nor Osmundson were seen at or near the point on the track where the obstruction was placed. They were last seen going in that direction, but as a matter of fact—not here material, because it was then unknown to Ehrlichman—they left the track before reaching that point. As they passed along the track, Osmundson "up-ended" and tipped down the railway embankment two ties lying along the embankment.

These facts, except the fact that the plaintiff and Osmundson left the track before reaching the point of the obstruction, were known or might have been known by reasonable inquiry to Ehrlichman when the complaint was made. In view of these facts, a prudent man would have made careful inquiry as to the time when the plaintiff and his companion were seen drunk going along the track, and one of them rolling ties down the embankment. And if he learned that this was after the southbound train had struck the obstruction and gone on its way to Albert

Lea, he certainly would not have been justified in believing that the plaintiff was guilty. Now, the evidence tends to show that the plaintiff and his companion were seen on the track after the obstruction had been struck by the train and gone on its way, and that Ehrlichman might have learned the fact by reasonable inquiry. There are other circumstances disclosed by the evidence relevant to the question whether the prosecution was instituted without probable cause, and, upon the whole record, we hold that the question was one of fact, and that it was properly submitted to the jury by the trial court.

The defendant, however, claims that there was no evidence in the case from which malice could be properly inferred. Malice is a distinct issue in an action for malicious prosecution, to be passed upon, as a general rule, as a question of fact by the jury. It may be inferred by the jury from want of probable cause, but they are not legally bound to do so, for the inference is one of fact, not of law. The defendant urges that the fact that its agent who made the complaint was a stranger to the plaintiff; that he had no motive for prosecuting him, except in the interests of public justice; and that he laid the facts before the county attorney and acted upon his advice—conclusively negatives any inference of malice. Whether the motive of the agent in instituting the prosecution was solely to bring a party whom he honestly believed to be guilty to justice was clearly a question for the jury. The rule as to the effect to be given to the fact that the prosecution was commenced on the advice of counsel is well settled. It is a defense to an action for malicious prosecution that it was instituted in reliance in good faith upon the advice of competent legal counsel, based upon a full statement to him of all the facts of the case known to the prosecutor, or which he had reason to suppose existed. As a general rule, it is a question of fact for the jury to say, upon the evidence, whether a full and fair disclosure of the facts was made to counsel, and whether his advice was sought and relied upon in good faith. Cole v. Curtis, 16 Minn. 161 (182); Moore v. Northern Pac. R. Co., 37 Minn. 147, 33 N. W. 334; Dunn v. Barton, 40 Minn. 415, 42 N. W. 289; Genevey v. Edwards, 55 Minn. 88, 56 N. W. 578; Cole v. Andrews, 70 Minn. 230, 73 N. W. 3. There is nothing in the facts of this case taking it out of this general rule.

3. The trial court permitted the plaintiff, over the objections of the defendant, to testify to conversations between himself and Ehrlichman with reference to plaintiff's guilt. This is assigned as error. The evidence was competent on the question of Ehrlichman's good faith in instituting the prosecution. What was said between them as to the plaintiff's waiving examination on the charge, and its effect, was competent on the question of good faith, and also as tending to rebut any inference which might be drawn from the fact that the plaintiff waived examination before the justice.

The only other assignment of error meriting consideration is that the trial court erred in instructing the jury to the effect that a master is responsible for the torts of his servant, done with a view and in furtherance of the master's business, whether the same be done negligently or wilfully, but within the scope of the agency, and the fact that the servant in such a case may have exceeded his actual authority, or even disobeyed his express instructions, does not alter the rule. The objection made to this instruction is that there was no evidence in the case that Ehrlichman had any authority to institute any prosecution against the plaintiff, or that he did in fact do so. The instruction, as an abstract proposition of law, was correct; and, as already stated, there was evidence tending to show that the defendant did authorize the prosecution, and that its agent did in fact institute it. It follows that the instruction was applicable to the evidence, and that it was not error to give it.

Order affirmed.


On July 15, 1904, the following opinion was filed:

START, C. J.

This cause was submitted upon the briefs of counsel, and on April 22, 1904, a decision was filed affirming the order appealed from. The defendant then filed a petition for a reargument, which led us to doubt the entire correctness of the decision, and an oral argument was ordered upon the question whether the evidence was sufficient to sustain the finding of the jury that the prosecution was instituted without probable cause and maliciously. The result of the oral argument and of the further consideration of the evidence, especially the testimony of the

county attorney, who had charge of the prosecution, is the conclusion that the evidence is legally insufficient to justify a finding that the prosecution was instituted by the defendant without probable cause, and maliciously. The character of the action, the general facts of the case, and the law applicable thereto are stated in the original opinion.

It is unnecessary to here repeat any of the facts stated in that opinion, except to emphasize by repetition the fact that the only instructions, relative to the obstructions on its tracks given by the defendant to its employee Ehrlichman were to investigate the matter, and, if he found any evidence to connect any person with the offense, to lay the case before the county attorney. The testimony of that officer was uncontradicted. He testified that he had charge of the prosecution against the plaintiff, and that Ehrlichman, after stating to him the facts he had learned as the result of his investigation of the attempt to wreck the train (the facts so stated were substantially as set forth in the original opinion), and giving the names of the witnesses, said that he had come to make a complaint against both Mundal and Osmundson, and that he thought he could secure a witness who saw one or the other of them throw the ties on the track. The county attorney further testified as follows:

> I excused Mr. Ehrlichman for an hour or two, and drew up a complaint, and interrogated the elder Dills boy, who was at that time a clerk at the drug store of F. E. Barlowe, and learned from Mr. Dills that he would testify nearly in accordance with the claim made to me by Mr. Ehrlichman.
>
> Question 17. Upon the statements made to you by Ehrlichman and others, if any, did you determine to take any action? Answer. I did.
>
> Question 18. If so, what action did you determine to take? Answer. To have the complaint sworn to, warrant issued, and a preliminary examination had, as to the crime in question, and the probable cause of the two defendants' (Mundal and Osmundson's) participation therein. * * *
>
> Question 33. On the information gained from investigation, if any, which you made prior to the hearing, what opinion, if any, did you form as to whether there was probable cause to be-

lieve Nickolai Mundal guilty of the crime in question? Answer. I thought, from what Mr. Dills told me, and the claims made by Mr. Ehrlichman, if the same could be sustained by proof, that there was probable cause to believe Mr. Mundal guilty of the offense charged.

Question 34. Did you communicate such opinion and give any advice to Ehrlichman? If so, what? Answer. Yes, I think I told Mr. Ehrlichman, as I have heretofore stated, that it would be necessary to connect the two defendants with the scene of the crime and with the acts referred to by Mr. Dills by locating the defendants in proximity to where the crime in question occurred; that it would be absolutely necessary to have the witnesses referred to by Mr. Ehrlichman as having seen the two defendants in close proximity to the place of crime in court to give their evidence, and that he should furnish me the parties' names at the earliest possible moment.

Question 36. Did you or did you not make any determination as to whether you would proceed with the prosecution? Answer. Yes.

Question 37. If so, what determination did you reach? Answer. I determined, on account of the probable enormity of the crime, to sift the thing to the bottom, and place the crime upon the shoulders of the guilty party, if possible.

On his cross-examination he testified: Question 19. Did not W. E. Ehrlichman make the complaint in the case on his own motion, and, after being advised by you that the evidence would be insufficient to hold Nickolai Mundal, the accused? Answer. I cannot answer that question except by No.

His testimony was in the form of a deposition, in which he answered sixty-nine questions on behalf of the defendant and one hundred five asked by the plaintiff, but the limited part to which we have referred sufficiently indicates his action with reference to the institution of the prosecution in question. A reading of the entire deposition clearly indicates that the county attorney determined, and, in effect, advised after a personal investigation that there was probable cause for instituting the prosecution, and that it was instituted by his official advice

and direction, and that Ehrlichman signed the complaint prepared by the county attorney in reliance upon his action and advice. The facts brought out on the trial of this action satisfy us that the plaintiff was innocent of the crime charged, but this is not the test of want of probable cause for instituting the prosecution. Genevey v. Edwards, 55 Minn. 88, 90, 56 N. W. 578.

It follows that the order appealed from must be reversed, and the cause remanded to the district court, with directions to grant the defendant's motion for judgment notwithstanding the verdict. So ordered.