SAMUEL PLOTKIN v. NORTHLAND TRANSPORTATION COMPANY.[1]

February 10, 1939.

No. 31,556.

[1]Reported in 283 N. W. 758.

*Sarah Gensler Schwartz,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre,* for respondent.

STONE, JUSTICE.

Appeal by plaintiff from judgment for defendant on the pleadings and opening statement of counsel for plaintiff, which makes the facts appear as follows:

December 25, 1934, plaintiff, Samuel Plotkin, was driving from Spring Park to Minneapolis. Following was a bus, operated by defendant company and driven by its employe. The bus had trouble passing Plotkin's car. Plotkin did not hear the bus's horn and failed to make room for the bus to pass on the left, as required by 1 Mason Minn. St. 1927, § 2720-14. After a time the bus did get ahead. In Crystal Bay the bus stopped at an intersection. Its driver walked back to Plotkin's car, stopped at the same crossing, and after words about Plotkin's previous failure to let the bus pass, struck Plotkin on the mouth. These facts, disclosed by complaint and opening statement of counsel for plaintiff, resulted in judgment for defendant.

The most explicit averment from the opening statement for plaintiff, and the one wherein the nearest approach is made to showing liability against defendant, was this:

"We will prove he [the bus driver] said he had to make schedule time, and wanted to get ahead of Mr. Plotkin. We will prove that he committed that assault in the scope of his employment, for the employer's interest, so that he might have the road to himself, and not have Mr. Plotkin either follow him or precede him  *  *  *."

Plaintiff's theory is that the bus driver, in punching Plotkin, was within the scope of his employment by defendant, and that,

under the rule of *respondeat superior,* the latter is liable. But, absent nondelegable duty, such as that imposed by the relationship of carrier and passenger or hotel and guest, the servant's battery does not make liability for the master unless the employment is of such a nature that it is likely to bring the former into conflict with others. Such a case was Burnham v. Elk Laundry Co. 121 Minn. 1, 139 N. W. 1069. There was involved a battery by an employe of the laundry. It was the former's duty to collect for his employer and to "preserve order on the premises." He got into a dispute with a customer over the amount due. Verdict against the laundry was sustained under the rule of *respondeat superior.* See Restatement, Agency, § 245. See also Merrill v. Coates, 101 Minn. 43, 111 N. W. 836.

Here the employment was not such as to bring the employe into conflict with others on the highway. Nor was the battery committed "as a part of or incident to a service" which was to be performed. Restatement, Agency, § 235 (one of the "illustrations" of the application of that doctrine is paraphrased for paragraph one of the syllabus) ; 2 Mechem, Agency (2 ed.) § 1977. The bus driver, having secured precedence, stepped outside his duty to his employer to indulge his own anger. For distinction between battery within and one without the scope of employment, see Johanson v. Pioneer Fuel Co. 72 Minn. 405, 75 N. W. 719.

It is not enough to make liability for the master that a battery by his servant would not have occurred except for the employment. The employment must be something more than mere occasion for the fracas. "It surely cannot be true that because the master has entrusted to a servant the performance of a duty, the master can be held responsible for whatever method the servant may adopt in attempting to perform it." 2 Mechem, Agency (2 ed.) § 1978.

Absent authorization for or ratification of assault, absent also nondelegable duty, referred to above, there is no liability on the master unless the duties to be performed "involve the use of force against persons or things" or are "of such a nature that they are not uncommonly accompanied by the use of force." Restatement,

Agency, § 245; see also 2 Mechem, Agency (2 ed.) § 1978 (where it is said that there must be something "indicating that the use of force was contemplated or usual.") ; *Id.* § 1977.

Lesch v. G. N. Ry. Co. 93 Minn. 435, 101 N. W. 965, was such a case. There a trespass was committed by servants of defendant who were employed to guard defendant's shop and yards, prevent property from being taken therefrom, and to search for property that had been taken. Liability was imposed on the master, but the case is obviously one where the servant's duties contemplated the use of force.

The distinction between duties contemplating the use of force and duties similar to those involved in the instant case is well recognized in the cases. See Morin v. People's Wet Wash Laundry Co. 85 N. H. 233, 156 A. 499; State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S. W. (2d) 801.

It is not sufficient that the battery is due to anger arising from performance of the servant's duties, Brown v. Boston Ice Co. 178 Mass. 108, 59 N. E. 644, 88 A. S. R. 469; or that the battery may advance or be intended to advance the master's interests. Morin v. People's Wet Wash Laundry Co. *supra;* Rudgeair v. Reading Traction Co. 180 Pa. 333, 36 A. 859 (facts much similar to the instant case except that the person battered by defendant's motorman was at the very moment blocking the advance of defendant's streetcar).

The rule above stated may need qualification in cases where third persons hinder and obstruct the employe in the performance of his immediate duties and a battery is committed to expedite performance. Restatement, Agency, § 245, Illustration 6, p. 551; but see 2 Mechem, Agency (2 ed.) § 1978. But whether or not that qualification is ever proper, this case does not lie within its limits. Here the interference by plaintiff was past interference, not immediately hindering the driver of the bus. The only factor connecting the battery with the employment was the prevention of future annoyance. By the decided cases, that is not enough. Brown v. Boston Ice Co. and State ex rel. Gosselin v. Trimble, *supra.*

At the moment here determinative, defendant's driver was en-

gaged in no business for his employer, and so what he did was not within the scope of his employment, nor, in the legal sense at least, in the furtherance of defendant's affairs.

We cannot see much, if any, analogy between the assault now in question and a foul committed by one jockey upon another in the course of a horse race. McKay v. Irvine (C. C.) 10 F. 725. There defendant was held liable for a foul committed by his jockey during the race, that is, in the scope of his employment and in furtherance of his master's purpose to win the race if possible. If after that particular race was over the jockey had assaulted his competitor because of provocation given during the race, we would have a case comparable to this one, where, we take it, the master of the offending rider would not have been held liable.

In Comment d, Illustration 7, § 245, of the Restatement, Agency, there is a similar case.

"A is employed to drive P's automobile. As T, a competitor, is passing the car which A is driving, A deliberately drives into T's car, doing this to prevent T from passing and also because A does not like T. This act may be found to be within the scope of A's employment."

If defendant's bus driver, in passing plaintiff's car on the road, had run into it, intentionally or negligently, defendant might have been liable as for a tort committed by its servant in the course of his employment. That result would not follow, however, if after a collision on the highway and after both cars had come to rest, the bus driver had done as he did here and had assaulted plaintiff to satisfy anger arising from a past occurrence and not at all in furtherance of defendant's interest in having its bus keep on schedule.

■ From the circumstances set forth in pleadings and opening statement, no jury could reasonably have found that the battery was committed within the scope of the employment. Counsel for plaintiff was given every opportunity to amplify her opening statement, and did make use of that opportunity. It being clear that counsel stated the facts deliberately and as she hoped to prove

them, it was "proper for the trial court to act upon the facts so asserted." Mahutga v. M. St. P. & S. S. M. Ry. Co. 182 Minn. 362, 364, 234 N. W. 474, 475.

In argument there has been too much reliance for plaintiff upon the conclusion of fact, in counsel's opening statement to the jury, that the battery was committed upon the plaintiff by the employe of defendant "in the scope of his employment and in the furtherance of defendant's business and in the discharge of his duties." In opening statement to court or jury much generality and conclusion may be used by counsel. But they should not forget, especially where, as here, a record of the utterance is being made, that the particular will control the general. Seldom, if ever, does that rule, both of logic and common sense, have an exception. The case for plaintiff fails because the particular facts, formally announced by his attorney to show liability, fail as matter of law to accomplish that result.

Judgment affirmed.

PETERSON, JUSTICE (dissenting).

■ Authority may be found, as the majority opinion shows, to sustain the proposition that the employer is not liable for the servant's wilful tort under the circumstances of this case. The authorities are in hopeless confusion. They have been reviewed many times by us, and I shall not essay the task again. In Penas v. C. M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926, 30 L.R.A.(N.S.) 627, 140 A. S. R. 470, the authorities are discussed at length. We there said that the confusion is greater in this than in any other corresponding branch of our jurisprudence. Our rule was settled in Smith v. Munch, 65 Minn. 256, 68 N. W. 19, having in view the conflict of authority and the modern tendency to extend liability in cases of this kind. Mr. Justice Mitchell stated the rule [65 Minn. 261]:

"While there is much conflict in the decisions as to when a master is liable for the intentional torts of his servant, yet the tendency of the modern authorities is to extend the liability of the master in such cases; and the general rule may now be said to be

that a master is responsible for the torts of his servant done with a view to the furtherance of the master's business, whether the same be done negligently or willfully, but within the scope of his agency. The fact that the servant, in committing the tort, may have exceeded his actual authority, or even disobeyed his express instructions, does not alter the rule," which has been followed ever since. Barrett v. M. St. P. & S. S. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047, 18 L.R.A.(N.S.) 416, 130 A. S. R. 585; Penas v. C. M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926; Schmidt v. Minor, 150 Minn. 236, 184 N. W. 964.

The test seems to be whether the servant's act was in the prosecution of the master's business or whether he had stepped aside from that business to commit an individual or personal wrong. Barrett v. M. St. P. & S. S. M. Ry. Co. *supra;* 18 R. C. L. p. 799, § 256. The assault was committed by the bus driver with a view to the discharge of the duties of his employment. His duties required him not only to drive the bus but to keep the schedule. He was to drive the bus not only to the place where he stopped and assaulted Plotkin but several miles beyond, to Minneapolis. He had had difficulty in passing Plotkin and anticipated more of the same trouble on the balance of the trip. That the driver deemed the presence of Plotkin ahead of him on the road an interference, which prevented and would continue to prevent him from keeping the schedule, is plain. The driver and plaintiff had become engaged in a dispute and contest for precedence on the highway. The bus driver claimed such precedence for the purpose only of enabling him to keep the schedule prepared for him in advance by defendant and thus do what defendant required him to do. The purpose was the master's not the individual purpose of the driver. Getting ahead of motorists who interfered with keeping the schedule was the driver's duty. In Burnham v. Elk Laundry Co. 121 Minn. 1, 139 N. W. 1069, the defendant as the owner of a laundry was held liable for an assault committed by a clerk on a customer calling at its store for a package of laundry. The quarrel arose as to the amount due, as a result of which defendant's clerk became angry

at the patron, ejected him from the store, and then assaulted him. Liability was predicated on the fact that the assault was provoked by trouble which grew out of the discharge of the duties of the employment. The fact that the driver had already passed plaintiff when he committed the assault is not controlling under our rule, although it may be under the authorities cited in the majority opinion. In Smith v. Munch, 65 Minn. 256, 68 N. W. 19, defendant's superintendent having charge of its premises, business, and employes, while performing their work, was held impliedly to be charged with the protection of the property and the premises from trespassers and the protection of the employes while at work from the interference of intruders. Plaintiff and others who were on a strike had committed disorderly conduct on the premises at noon and returned five hours later. Thereupon the superintendent had the police without a warrant arrest plaintiff on a charge of disorderly conduct committed five hours before. The employer was held liable because the arrest related not only to the past act but to the future protection of its property and premises. Here the assault related not only to the past interference but to the prevention of future interference on the balance of the trip into Minneapolis. In Schmidt v. Minor, 150 Minn. 236, 184 N. W. 964, the employer was held liable for an assault by his superintendent committed on an employe after he had quit his employment and had started to leave the premises. The trouble began before the employe quit, and the superintendent stated that at the time he assaulted the employe he was watching the latter to see that he did not take anything that did not belong to him. There too an assault relating to a past act also had in view a future act, the protection of the master's property. In Curley v. Electric Vehicle Co. 68 App. Div. 18, 74 N. Y. S. 35, after the defendant's driver had driven ahead of plaintiff's vehicle he backed into plaintiff's horse, inflicting serious injury upon him, for which the employer was held liable. In Dealy v. Coble, 112 App. Div. 296, 98 N. Y. S. 452, cited with approval in Penas v. C. M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926, the master was held liable for an assault committed by the driver of a sleigh in attempting to prevent a boy who was then

running alongside of it from again getting on. The assault was to prevent the boy from doing a future act interfering with the rights of the master. In Croft v. Alison [1821] 4 Barn. & Ald. 590, the employer was held liable for a driver's striking the horses of another person in passing them, where the act was done in the course of the employment. In Limpus v. London General Omnibus Co. [1862] 1 H. & C. 526, the employer was held liable for the act of the driver of his omnibus who drove it across the road in front of a rival omnibus after he had passed it. This case cannot be distinguished from the one at bar. It is interesting to note that, although Lord Kenyon had held otherwise in M'Manus v. Crickett [1800] 1 East, 106, with the hope that he had set the question "at rest," the modern rule of liability was adopted by the English courts in cases which are not distinguishable from the instant one. I cannot see why the master should not be held liable in a case of this kind for an assault committed after the passing as well as one committed in the act of passing, for which admittedly the defendant would be responsible. The test of liability is the same in either case: Was the act done in the prosecution of the employer's business? In McKay v. Irvine (C. C.) 10 F. 725, the jockey committed the foul to enable him to take and hold the lead over his opponent. The master was held liable not because the foul was committed in the act of passing and not afterward, but because it was done in the scope of the jockey's employment to win the race. If the jockey had waited until he had pulled up in front of his opponent before fouling him it should have made no difference. There, as here, the act was committed to enable the driver to get ahead and maintain the lead when he once got it. The foul by the jockey is comparable to the assault of the driver.

Important here is one of the reasons often advanced in support of liability in this class of cases, that such wrongs are committed by the employes only because of the employment and not because of personal reasons, that the employer has the benefit of the enterprise and is better able to administer the risk. If he cannot altogether avoid such wrongs, he at least can minimize them. A general sense of fairness requires that the employer as the person

interested and benefited by the business, rather than persons who have no concern in or control over it, should bear the burden of such wrongs as incident to such business. Public as well as private aspects of the situation deserve consideration. Penas v. C. M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926; 18 R. C. L. p. 809, § 263; Harper, Torts, § 291, p. 640; 45 Harv. L. Rev. 342.

If the defendant may not be held liable to plaintiff it could not be held liable for a similar assault on an aged and infirm driver, a woman or a child under similar circumstances. It seems that the defendant by sending its drivers out upon the highway to compete and dispute with other motorists should bear the responsibility for such wrongs arising from the conduct of its business.

■ The opening statement stated facts under which it could be proved that defendant was liable. The purpose of the opening statement is to advise the jury in a general way as to the nature of the evidence to be received. Some judges encourage counsel to make the statement as brief and general as possible. The statement that the driver's acts were in the course of his employment was a statement of fact susceptible of proof. Any evidence tending to prove the fact is admissible under such a statement. Foran v. Levin, 76 Minn. 178, 78 N. W. 1047; Kuhl v. U. S. H. & A. Ins. Co. 112 Minn. 197, 127 N. W. 628. I see no reason why an express command to commit the assault, if it had been given, could not be proved thereunder. Judgment should be granted on the opening statement only where counsel makes an advised admission of fact which precludes recovery. But here no such admission was made. This phase of the case is covered in accordance with our rule by Mr. Chief Justice Hughes in Best v. District of Columbia, 291 U. S. 411, 415, 54 S. Ct. 487, 489, 78 L. ed. 882, 885, in which he said:

"The opening statement of counsel is ordinarily intended to do no more than to inform the jury in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence. 'If a doubt exists,' said the Court in the Oscanyan Case, 103 U. S. 261, 26 L. ed. 539, *supra,* 'as to the statement of counsel, the court will withhold its directions, as where the

evidence is conflicting, and leave the matter to the determination of the jury.' Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists."

In Barrett v. M. St. P. & S. S. M. Ry. Co. 106 Minn. 51, 54, 117 N. W. 1047, 1048, we said that the power to direct a verdict on the opening statement should be exercised sparingly "and never without full consideration and opportunity for counsel to explain and qualify his statement so far as the truth will permit," citing Oscanyan v. Arms Co. 103 U. S. 261, 26 L. ed. 539, cited in Best v. District of Columbia, *supra*.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

[1]Reported in 283 N. W. 753.