MORTON S. BARRETT v. MINNEAPOLIS, ST. PAUL & SAULT STE.
MARIE RAILWAY COMPANY.[1]

October 30, 1908.

Nos. 15,683, 15,652—(6, 7).

**Directed Verdict.**

Action for damages which the plaintiff, a trespasser on the defendant's
freight train, claimed to have sustained by being forced, by the wanton
act and threat of a brakeman, to jump from the train while it was
moving rapidly. Verdict for $26,000. *Held*, the defendant was not
entitled to a directed verdict on the alleged ground that the plaintiff and
the brakeman were co-trespassers, nor upon the opening statement of
plaintiff's counsel as to the motive which actuated the brakeman, nor
because of a rule of the defendant forbidding brakemen to eject any
person from a train except by direction of the conductor and in his
presence.

**Same—Conceded Facts.**

A trial court has the right to act upon the facts deliberately conceded
by counsel in his opening statement to the jury, and direct a verdict
against the plaintiff if such conceded facts would not entitle him to
a verdict; but such power must be exercised sparingly, and never with-
out full consideration and opportunity for counsel to qualify his state-
ment, so far as the truth will permit.

**Torts of Servant.**

A master is responsible for the torts of his servant, done in the
course of his employment with a view to the furtherance of his master's
business, and not for a purpose personal to himself, whether the same
be done wilfully, but within the scope of his agency, or in excess of
his authority, or contrary to the express instructions of the master.

**New Trial.**

The trial court did not err in granting a new trial on the ground
that the damages were excessive.

Action in the district court for Ramsey county to recover $30,000,
for personal injuries alleged to have been sustained by the infant
plaintiff through defendant's negligence. At the close of the testi-
mony defendant made a motion for a directed verdict which was de-
nied. The case was tried before Hallam, J., and a jury which render-

[1] Reported in 117 N. W. 1047.

ed a verdict in favor of plaintiff for $26,000. From an order denying defendant's motion for judgment in its favor notwithstanding the ver-, dict but granting a new trial, defendant appealed. From that part of the order granting a new trial plaintiff appealed. Affirmed on appeals.

*Edwin S. Thompson* and *Frederick N. Dickson,* for plaintiff.

*A. H. Bright* and *Munn & Thygeson,* for defendant.

START, C. J.

Personal injury action, in which the plaintiff had a verdict, in the district court of the county of Ramsey, for $26,000. The defendant then made an alternative motion for judgment notwithstanding the verdict or for a new trial. The trial court made its order denying the motion for judgment and granting a new trial. Each party appealed.

The defendant's appeal presents the question whether, upon the record, it was, as a matter of strict legal right, entitled to a directed verdict; hence to judgment absolute in its favor. The record discloses evidence sufficient, if satisfactory to the jury, to sustain the finding by them of the facts following:

On August 7, 1907, the plaintiff, a young man about nineteen years old, desiring to go from Velva to Harvey, in North Dakota, without claim of right and for the purpose of stealing a ride to his destination, got into one of the defendant's box cars, which was in and near the center of a freight train of thirty or more cars which did not carry passengers. The train started on its way, with the plaintiff in the car; but it stopped some distance beyond Velva, when the plaintiff was discovered in the box car by one of the crew in charge of the train, a brakeman, who directed the plaintiff to "unload and stay away from the train," which he understood as an order to get out of the car, and he at once complied. After the plaintiff was out of the car and standing on the ground near the train, the brakeman asked him where he was going. The answer was: "To Harvey." The brakeman wanted twenty five cents to carry the plaintiff, who replied that he had no money. Nothing further was said, and the brakeman walked away. The plaintiff, intending again to board the car, kept out of sight of the trainmen, including the brakeman, until the train start-

ed. He then attempted to board the car, and while the train was moving at the rate of some fifteen miles an hour, and he was standing in the stirrup on the side of the car and hanging on to the grab iron, the brakeman, who was on the top of the cars, saw him, and started toward him, and in an angry manner, calling him a vile name, ordered him to jump off the car or he would kick his head off. The plaintiff was frightened by this threat, and fearing that it would be executed if the order was not obeyed, and induced thereby, dropped or jumped from the moving car to the ground, whereby he was seriously injured.

The evidence as to some of these facts was radically conflicting, especially as to the speed of the train at the time; the evidence on the part of the defendant tending to show that the speed did not exceed five miles an hour. Also, as to what the brakeman said to the plaintiff when he was discovered hanging to the side of the car, the brakeman's testimony was that when he saw the plaintiff he "hollered for him to keep off—to get off"; and, further, as to the brakeman's request for twenty five cents for carrying the plaintiff, the brakeman testified that he never made any demand of the plaintiff for any money, and unqualifiedly denied the testimony of the plaintiff that such demand was made. There was also evidence on the part of the defendant tending to show that the plaintiff's testimony as to how he was injured was not true. The weight of the evidence and the credibility of the witnesses were questions for the jury.

Counsel for the plaintiff in his opening statement to the jury stated that: "The brakeman comes around and discovers that the boy was there at the time and he was sore—not because the boy was riding, but because he was riding without paying twenty five cents. I don't know what his intentions were." Plaintiff's counsel also, in discussing the admissibility of evidence as to what the brakeman said to plaintiff when he was first ordered off the car, said, in substance, that he would show that the brakeman was simply continuously sore from the time the plaintiff refused to pay the twenty five cents, and claimed that the proposed evidence was admissible to enable the jury "to admeasure by proper standards and to find out, as a matter of ultimate fact, whether or not that brakeman was actuated by temper and spleen and malice at the time he ejected that boy; that he was con-

tinuously sore and in temper, and that was one of the inducing causes why he made this assault upon the boy as we claim in the complaint."

The defendant claimed nothing at the trial on account of such statements, and took no action with reference to them, except to request the court to instruct the jury that if it were a fact that the brakeman demanded the twenty five cents, which was refused, as plaintiff claimed, and the brakeman, incensed thereby, threatened to kick plaintiff off the car, they were joint trespassers, and the verdict must be for the defendant.

1. The first contention of the defendant is that this case falls within the rule, established in the case of Brevig v. Chicago, St. P., M. & O. Ry. Co., 64 Minn. 168, 66 N. W. 401, that where a person bribes a brakeman of a railway company to permit him to ride in a freight car they are joint trespassers, and if, during the passage, such person is improperly ejected from the car by the brakeman, it is simply an assault of one trespasser upon another, for which the company is not liable, therefore the defendant in this case was entitled to an instructed verdict. There was no evidence in this case even tending to show that the plaintiff either bribed or offered to bribe the brakeman, who testified that he never asked the plaintiff for any money. It is perfectly obvious from the record that the rule invoked has no relevancy to the facts of this case. The defendant was not entitled to an instructed verdict on the ground that the plaintiff and the brakeman were co-trespassers, nor to have the question submitted to the jury in compliance with its request.

2. It is further claimed by defendant that it is entitled to a judgment notwithstanding the verdict, for the reason that the statements of counsel to which we have referred, taken in connection with the evidence, conclusively show that the brakeman, in ejecting the plaintiff, was not acting in the performance of any duty, but for the sole reason that he was sore at respondent for not having paid him twenty five cents. A trial court has the right to act upon facts deliberately conceded by counsel in his opening statement and to direct a verdict against the plaintiff upon such concession, if such facts, if proven, would not entitle the plaintiff to a verdict. Such power, however, must be exercised sparingly, and never without full consideration and opportunity for counsel to explain and qualify his statement

so far as the truth will permit. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Spicer v. Bonker, 45 Mich. 630, 8 N. W. 518. It is clear on the face of the statements of counsel here urged that they are not within the rule stated, and that they afford, taken in connection with the evidence, no support for the defendant's claim.

3. It is the further contention of the defendant that the brakeman had no authority to eject the plaintiff from the train; therefore the defendant is not responsible for the act of the brakeman. The defendant urges in this connection that the complaint alleges that the brakeman had express authority to eject trespassers from the train, and that the plaintiff was bound to show such authority, and that he wholly failed to do so. We are of the opinion that he was not; but, were it otherwise, it would not be a reason for ordering judgment notwithstanding the verdict, for the defect, if any, can be cured by an amendment of the complaint on a new trial.

The defendant introduced in evidence its rule as to the duty of its brakeman, which provides that brakemen are expected to be vigilant and to perform their duties without special instructions from conductors, and contains specific and detailed instructions as to their duties on trains which carry passengers. Then follows this prohibition: "Brakemen will not eject any person from a train except by special direction of the conductor and in his presence." It is doubtful whether this prohibition, in view of what precedes it and its inapplicability to freight trains, can be fairly construed as prohibiting brakemen from keeping trespassing tramps off freight cars. However this may be, the trial court called the attention of the jury to this rule and instructed them that: "A master is responsible for the torts of his servant, done with a view to the furtherance of the master's business, whether the same be done negligently or wilfully, but within the scope of his agency. The fact that the servant, in committing the tort, exceeded his actual authority, or even disobeyed his express instructions, does not alter this rule. Considering these facts, and these principles of law, you will determine the question as to whether the defendant company was liable for the act of the brakeman, whatever it was. Of course, if the act was beyond the scope of his agency or authority, the defendant is not liable."

If this be a correct statement of the law applicable to this case, it

follows that the defendant was not entitled to a directed verdict on the ground that the brakeman had no authority to eject the plaintiff from the car; for there was evidence tending to show that the brakeman's act here in question was done in the course of his employment, with a view to the furtherance of the defendant's business, and within the scope of his agency. The plaintiff was a trespasser on the car, and the defendant owed him no duty except to refrain from wantonly injuring him in ejecting him from the car, and from ejecting him, or forcing him to jump, from the car when it was going so rapidly as to endanger his life or person. The brakeman in this case had implied authority to eject the plaintiff from the freight car (Brevig v. Chicago, St. P., M. & O. Ry. Co., 64 Minn. 168, 66 N. W. 401) ; hence the evidence on the part of the plaintiff was sufficient, prima facie, to sustain a finding by the jury that the brakeman, in forcing the plaintiff off the car, was acting in furtherance of the defendant's business and within the line of his duty.

Was this prima facie case overthrown, and the defendant entitled to a directed verdict, by the introduction in evidence of the rule forbidding brakemen from ejecting any person from a train, except upon the condition that it be done by the special direction of the conductor and in his presence? We answer the question in the negative. In an opinion denying a motion for a rehearing in the Brevig case, it was stated that: "while we are of opinion that the general duties of brakemen are such that their implied authority to eject trespassers will be presumed, yet we are also of opinion that as to a trespasser, which plaintiff clearly was, this presumption may be rebutted by evidence showing that such authority was expressly withheld, or its exercise forbidden; and, if that fact was established, the defendant would not be liable to the plaintiff for the acts of its brakeman in ejecting him from the train. How strong or complete this evidence should be, in order to make the question one of law for the court, instead of one of fact for the jury, it is unnecessary now to consider, further than to say that, in view of the general nature of the occupation of brakemen, the evidence that authority to eject trespassers had been expressly withheld or forbidden should be clear and full, in order to overcome the presumption of the existence of such implied authority."

If this were a correct statement of the law, we would be of the

opinion that the evidence in this case made the question one of fact. We do not, however, base our answer to the question upon this narrow ground, but upon the now well-settled rule of this court, whatever may be the rule in other jurisdictions, that a master is responsible for the torts of his servant, done in the course of his employment with a view to the furtherance of his master's business, and not for a purpose personal to himself, whether the same be done negligently or wilfully, but within the scope of his agency, or in excess of his authority, or contrary to the express instructions of the master. Any statement to the contrary in the Brevig case is overruled. Smith v. Munch, 65 Minn. 256, 68 N. W. 19; Larson v. Fidelity Mut. Life Assn., 71 Minn. 101, 73 N. W. 711; Lesch v. Great Northern Ry. Co., 93 Minn. 435, 101 N. W. 965; Crandall v. Boutell, 95 Minn. 114, 103 N. W. 890; Merrill v. Coates, 101 Minn. 43, 111 N. W. 836; Anderson v. International Harvester Co., 104 Minn. 49, 116 N. W. 101.

We hold, upon a consideration of the record in this case, that the defendant was not entitled to a directed verdict, and that the trial court did not err in denying its motion for judgment notwithstanding the verdict.

3. This brings us to a consideration of the plaintiff's appeal from so much of the order as granted the defendant's motion for a new trial. It appears from the memorandum of the learned trial judge attached to the order that a new trial was granted on the ground that the evidence was not sufficient to sustain a finding that the plaintiff's injuries were permanent, and therefore the damages awarded were excessive. We are satisfied, from an examination of the evidence relevant to the question of damages, that the trial court did not err in granting the defendant a new trial, and so hold.

Order affirmed on both appeals.