BITZKE, Plaintiff, vs. FOLGER, Defendant: GREENFIELD LAUNDRY SERVICE, INC., Respondent, vs. WITTENBERGER, Appellant.

*May 9—June 6, 1939.*

514

For the appellant there was a brief by *Julius O. Roehl,* and oral argument by *Harry G. Slater,* both of Milwaukee. *John C. Doerfer* of Milwaukee, for the respondent.

FRITZ, J. In this action, which was commenced by Charles J. Bitzke against the defendants, Mary Folger and the Greenfield Laundry Service, Inc. (hereinafter called the "Laundry Company"), he charged in his complaint that the Laundry Company had failed to perform its obligations under certain settlement agreements made between the parties, and that it had entered into a conspiracy with Mary Folger to defraud the plaintiff. One agreement, which was signed by Bitzke and Mary Folger on October 4, 1935, was in settlement of an action which he had commenced against Mary Folger, her husband, and the Laundry Company, to determine whether it was a corporation or a partnership and the extent of the plaintiff's interest therein, and to liquidate the corporation. The other agreement is alleged to exist by reason of the Laundry Company's acceptance and ratification on April 25, 1936, of the settlement agreement of October 4, 1935; its agreeing to carry out the spirit thereof; and its accepting the plan thereunder for an agreed distribution and transfer by Mary Folger to Bitzke of certain of her shares of stock in the corporation. Upon the interpleading of Alvin B. Wittenberger as a defendant, on the application of the Laundry Company, it filed a cross complaint against him upon which it seeks to recover from him dam-

ages which it sustained by reason of his malicious interference with Mary Folger's performance of the contracts and agreements which existed between her and Bitzke and the Laundry Company; and also seeks to have Wittenberger enjoined from maliciously interfering with such performance. He filed a demurrer to the cross complaint on the ground that it does not state facts sufficient to constitute a cause of action.

Wittenberger's first contentions in support of his demurrer are that the allegations are insufficient in that the alleged settlement agreement of October 4, 1935, which is referred to in paragraph 9 of the cross complaint is not set forth therein, nor made part thereof by reference; and that, consequently, "there is no agreement set forth in the cross complaint upon which any action could be founded, as the terms of that agreement are not set forth." In reply the Laundry Company contends that the settlement agreements, simple in form, are nevertheless sufficiently set forth and referred to in paragraphs 9 and 13 of the cross complaint to fully apprise and not to mislead Wittenberger; and that because its action for malicious interference with a contract is an action sounding in tort,—and not *ex contractu*,—the contract allegedly interfered with need not be fully set out in its complaint. Those contentions on behalf of the Laundry Company are sound, and consequently Wittenberger's contentions cannot be sustained. The allegations in the cross complaint as to intentional and wilful acts by Wittenberger, which were calculated to cause loss and damage to the Laundry Company in its lawful business, and which were done with the unlawful purpose of causing such loss and damage, without any right or justifiable cause on his part, and did result in such loss and actual damage, make out a *prima facie* case of malicious and wrongful interference with alleged contracts; and as the purpose under the cross complaint is to recover those damages, it is sufficient to state merely the

effect of the contracts, in so far as material, instead of setting out the contracts in full, or making them part of the cross complaint. As is stated in 15 R. C. L. p. 63, § 24,—

"A complaint for damages for maliciously inducing the breach of a contract need not set out the contract, but it is sufficient to state its effect so far as material." See *Wheeler-Stenzel Co. v. American Window Glass Co.* 202 Mass. 471, 89 N. E. 28, L. R. A. 1915 F, 1076; *McGurk v. Cronenwett,* 199 Mass. 457, 460, 85 N. E. 576, 19 L. R. A. (N. S.) 561.

There was sufficient compliance with that rule by reason of allegations in respect to the following matters,—

"That thereafter, to wit, on the 4th day of October, 1935, the parties entered into a settlement agreement as set forth in paragraph 4 of plaintiff's complaint for their respective benefits and for the benefit of the 'Greenfield Laundry Service, Inc.' "

"That on or about the 25th day of April, 1936, the corporation accepted the settlement agreement above referred to, and ratified the same and also entered into an agreement to carry out the spirit of said settlement agreement and accepted the plan put forth for the redistribution of the stock held by Mary Folger wherein and whereby it was agreed by and between Charles J. Bitzke and Mary Folger and the Greenfield Laundry Service, Inc., that Mary Folger should transfer to Charles J. Bitzke sufficient shares of her stock holdings so that she would have eighty-two shares and Charles J. Bitzke would have active control and possession of eighty-one shares and one share to be transferred to Charles J. Bitzke, but not to be voted on by Charles J. Bitzke, or his assignee, until Mary Folger disposed of her interest in said corporation either by sale, transfer, gift, or death; and that one share would be transferred to Gerald Kops and one share to John C. Doerfer, who were to serve upon the arbitration committee set up in the settlement agreement above referred to."

And, in connection therewith, the allegations that the agreement of October 4, 1935, was made in settlement of the action to which Bitzke, Mary Folger, and the Laundry

Company were parties; and that it was agreed between them that that action "should be settled and that such settlement would work for the best interest of all the parties to said action, including the business being conducted as the Greenfield Laundry Service, Inc." By those allegations it appears (1) that the parties to and bound by the agreement of October 4, 1935, and the Laundry Company's acceptance and ratification thereof by the agreement which it entered into on April 25, 1936, are: Charles J. Bitzke, Mary Folger, and Greenfield Laundry Service, Inc.; (2) that there was a meeting of their minds in respect to the settlement and dismissal of the pending lawsuit commenced against the other two by Bitzke, to a rearrangement of the stockholdings of Bitzke and Mary Folger, which was to be recognized by the corporation and by its making a transfer accordingly upon its books, and to the recognition of an arbitration committee which was to function in regard to matters relating to Bitzke's employment by the corporation; and (3) that there was a valid and sufficient consideration by reason of the Laundry Company's recognition of Bitzke's right as a stockholder and to be in its employment, the ending of the litigation and the beginning of harmony and co-operation between Bitzke, Mary Folger, and the Laundry Company, and the dismissal of Bitzke's action against it for a receiver and the liquidation of its affairs. Thus there were sufficiently alleged the elements essential to constitute a contract, and also the effect thereof in so far as was material to a cause of action for alleged malicious interference with the performance thereof. If there were any uncertainty or indefiniteness in those respects it would not render the cross complaint demurrable. Matters which may be fairly inferred from the facts alleged may be regarded as sufficiently pleaded as against a demurrer. 13 C. J. p. 717, § 830. If the pleading ought to be made more definite and certain, Wittenberger, instead of demurring, should have made a

motion to that effect under sec. 263.43, Stats. *Weber v. Naas,* 212 Wis. 537, 250 N. W. 436.

Wittenberger also contends that the allegations in the cross complaint are insufficient, because there is no allegation that any contractual rights or benefits were conferred upon the Laundry Company by the alleged agreements. In that connection Wittenberger claims that the Laundry Company was not a party to the contract; that its agreement expressly limits the operation thereof to two parties, Bitzke and Mary Folger, individually and as executrix of the estate of her deceased husband; that no facts are pleaded showing that the settlement agreement ever became effective by compliance with the conditions upon which it was to become effective, *i. e.,* only if Mary Folger received eighty-two shares as the sole legatee under her husband's will; that there is no allegation that the right ever arose to create the new agreement, entered into on April 25, 1936; and that that agreement created no rights or benefits to the Laundry Company, but was limited to a distribution of its stock. In connection with the latter, Wittenberger's counsel argues that the only benefit alleged to be in favor of the Laundry Company under the original agreement was the release by Mary Folger of her claims against it in consideration of a note and mortgage for $2,800 which it was to give to her, but as to which she could not compel performance because the Laundry Company had never signed the agreement which came within the statute of frauds because it involved real estate; and that if Mary Folger could not enforce that obligation the corporation could not enforce performance by her. Those contentions and claims likewise cannot be sustained. The absence of the Laundry Company's signature to the agreement of October 4, 1935, was not fatal to its right to enforce performance of the agreement as a beneficiary thereunder, if in effect it was for its benefit in any material respect. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440; *Bechthold v.*

*O. F. P. Investment Co.* 221 Wis. 303, 266 N. W. 915. That there were substantial rights and benefits as the result of performance of that agreement expressly conferred upon the Laundry Company and that it was intended to directly derive benefits thereunder are apparent from the following allegations in the cross complaint,—

"and the said defendant, Alvin B. Wittenberger knew and had knowledge and understood the effect of said contracts and agreements, and that these served to bring peace between Charles J. Bitzke, Mary Folger, and Greenfield Laundry Service, Inc., and that they served to redistribute the respective interests of the parties in said corporation upon and in accordance with the settlement agreement entered into on the 4th day of October, 1935, and the contract entered into on the 25th day of April, 1936; and that a further effect of said agreement was to help launch the Greenfield Laundry Service, Inc., upon the road to recovery and that at the time the defendant Alvin B. Wittenberger made his investigation, the company had made substantial progress and recovery to a point that its back taxes were almost entirely paid up; that the back interest upon the mortgage had been paid up; that the fears of the mortgagee had subsided and that said mortgagee was satisfied of the progress made to the extent that he was content not to exercise his right of foreclosure, and that the said corporation gave every promise of working out of its difficulties and entering into a prosperous period.

"But, notwithstanding that Alvin B. Wittenberger, defendant, had such knowledge and information and understood these contracts and agreements and the favorable results flowing therefrom, and notwithstanding that he understood that the small difficulties could be ironed out by resort to the machinery set up in said settlement agreement, to wit, by reference to the arbitration committee, whereby the small complaints and alleged grievances, bound to incur, could be disposed of with the minimum expense to said corporation, and without danger of disrupting the orderly progress made by said corporation or by the business routine necessary to efficient and profitable operation, he, the said defendant Alvin B. Wittenberger, wilfully, and with malicious intent,

wrongfully induced the defendant Mary Folger to breach the contracts and agreements above referred to," etc.

It is manifest that in so far as the agreements provided for the termination of the strife and litigation between the Laundry Company's stockholders and officers, and the establishment of means intended to preserve peace between them, and to rehabilitate and improve its financial affairs and interests, the corporation was expressly constituted a recipient of contractual rights and benefits, the continued existence and enjoyment of which, by means of the conduct of its affairs in the manner provided by the settlement agreements, it was entitled to have protected, as proposed in its cross complaint, against the malicious and wrongful interference of an intermeddler concerned in furthering his own personal advantage at the expense of the corporation. In so far as the benefits which the Laundry Company was to derive under the express terms of the agreements are concerned, it appears from the allegations in the cross complaint that the enjoyment of those benefits began upon the making of the agreements, and its enjoyment thereof was not considered contingent upon its compliance with any condition precedent to the agreements becoming effective. At all events, in view of the facts and circumstances alleged, objections because of any claimed noncompliance with conditions precedent, as well as objections to the power of those who were parties to or beneficiaries under the initial contract, to make a new contract subsequently can be raised only by the parties thereto. Such matters do not concern an intermeddler such as Wittenberger. Moreover, it was, as a matter of law, within the powers of those who were parties to, or beneficiaries under the agreement of October 4, 1935, to agree to a modification thereof to subsequently create a new contract in relation thereto. Consequently there was no occasion to allege any facts as basis for the exercise of that power.

Wittenberger further contends that the alleged agreements are illegal because, in so far as the corporation agreed to give a mortgage on real estate to Mary Folger, the agreement is void under the statute of frauds in view of the failure of the Laundry Company to sign the agreement of October 4, 1935; and that in so far as it provided for an arbitration committee to determine controversies arising in relation to Bitzke's employment, it was unlawful because under sec. 180.13, Stats., "the stock, property, affairs and business of every such stock corporation shall be under the care of and be managed by a board of directors who shall be chosen annually by the stockholders from among their number." Those contentions cannot be sustained. As long as Mary Folger was willing and ready to continue to perform on her part, Wittenberger had no right to maliciously procure her to terminate or to refuse performance of the contract, even though it was not signed by the Laundry Company in compliance with the statute of frauds. *Rice v. Manley*, 66 N. Y. 82, 23 Am. Rep. 30. Inability, if any, to enforce the provision as to the giving of a real-estate mortgage, or to proceed by arbitration as intended, is a matter that likewise concerns only the parties or a beneficiary under the agreements. They may voluntarily perform in respect to the mortgage, and there may never arise any occasion for arbitration. In either event, it is their privilege to waive performance in either or both of those respects, and whether they do so or not, or the agreements are or are not enforceable in those respects does not concern Wittenberger, or afford any excuse or justification for his intermeddling by maliciously inducing the breach by Mary Folger of the agreements in other enforceable respects. In so far as the Laundry Company had and was enjoying the benefits of at least some contract rights, an intermeddler's malicious interference with performance thereof constituted an actionable violation. Even though some part of the agreements may have been legally unenforceable,

nevertheless, the malicious procurement of the termination thereof by an intermeddler, while the parties thereto were ready and willing to continue performance, would render him liable for damages caused thereby. *Martens v. Reilly,* 109 Wis. 464, 474, 84 N. W. 840.

There is applicable by reason of the analogous circumstances the statement in 15 R. C. L. p. 86, § 48, that,—

"According to the weight of authority neither the fact that the term of service interrupted is not for a fixed period nor the fact that there is not a right of action against the person who is induced or influenced to terminate the service or to refuse to perform his agreement is of itself a bar to an action against a third person maliciously and wantonly procuring the termination of employment or a refusal to perform an agreement therefor. It is the legal right of a party to such an agreement to terminate it or to refuse to perform it, and in doing so he violates no right of the other party to it; but so long as the former is willing and ready to perform, it is not the legal right, but is a wrong on the part of a third person maliciously and wantonly to procure the former to terminate or refuse to perform it." See *United States Fidelity & Guaranty Co. v. Millonas,* 206 Ala. 147, 89 So. 732, 29 A. L. R. 520; *Cumberland Glass Mfg. Co. v. De Witt,* 120 Md. 381, 87 Atl. 927.

*By the Court.*—Order affirmed.