VIGGO JENSEN v. NELS LUNDORFF AND ANOTHER.

103 N. W. (2d) 887.

June 17, 1960—No. 37,849.

*Paul J. Louisell* and *David W. Louisell,* for appellant.
*Albert Johnson* and *George E. Sausen,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered in favor of defendants pursuant to an order of the trial court dismissing the cause of action upon the opening statement of plaintiff's counsel.

In his opening statement, plaintiff's counsel stated that he intended to prove that plaintiff is a real estate agent conducting his business in the village of Sandstone; that defendant Nels Lundorff is the president of defendant Sandstone State Bank; that John Swanson and his wife were the owners of a farm near Sandstone and they hired plaintiff to sell the farm for them; that plaintiff contacted certain people named Oosterwijk and Van Derweldt and sold the farm to them for $25,000, together with personal property, including livestock and machinery, for $21,000; that the farm was sold on a contract for deed and a chattel mortgage was taken to secure the purchase of the personal property; that as part of the contract the purchasers were to deposit the milk checks in defendant bank and one-half thereof was to go to the buyers and the other half to the sellers under the terms of the contract; that no interest was to be due until half a year after the date of the execution of the contract and out of the interest payments plaintiff was to be paid his commission of $2,600; that the purchasers lacked sufficient funds to make the downpayment and plaintiff advanced $1,500 to them, for which he took their note; that defendant Lundorff knew all the facts pertaining to this agreement and undertook to carry out the terms thereof; that sometime after entering into possession of the property the purchasers found themselves short of money and went to see plaintiff for the purpose of asking him to contact the sellers to see if they would consent to the deferment of the payments which were soon to be due under the contract; that plaintiff was busy and could not talk to the purchasers at that time so they went to see Lundorff; that Lundorff informed them that they had paid too much for the farm, that the sellers needed money and Lundorff was confident that if they had to take the farm back they could not get nearly as much upon a resale,

and that he was sure that they would take less than the amount called for in the contract; that he told the buyers that they should submit a new contract and that it should be drawn so that they, the buyers, would save $5,000 and that he, Lundorff, would of necessity make a few thousand dollars because of his processing and financing and other factors which would be shown by the evidence. Lundorff also told them, according to counsel's statement, that the buyers could bring a lawsuit against the sellers and thus put pressure upon them, if necessary, to accept the terms that Lundorff was proposing as a new contract; that plaintiff was no good; that he was doing wrong business; that he talked people into buying against their own welfare; that he took advantage of displaced persons who were immigrants to this country; that he, Lundorff, would break plaintiff; that plaintiff did not have much financially; and that plaintiff owed him money. Counsel further stated that he would prove that Lundorff told the buyers to meet him at his bank and he would prepare a new contract; that they did meet Lundorff at the bank and Lundorff attempted to have the bank's attorney draft the new contract but that Lundorff finally dictated the terms of a new proposed contract to one of the bank's employees; and that it was typed at the bank and signed by the buyers and witnessed by other employees of the bank. Counsel then stated that he would prove that the buyers sent the contract to Mr. Swanson, the seller, who refused to consent to the change in the terms of the contract; that thereafter the buyers consulted a lawyer in Duluth, who is now deceased, about bringing an action to rescind the contract; that, relying on counsel's advice that they had a right to rescind and abrogate the existing contract, the buyers refused to make the interest payment due May 6, 1954, and thereafter the contract was canceled; that up to the time they consulted this attorney there was no breach in the contract. He also offered to prove that if it had not been for the interference of Lundorff the buyers would not have gone to an attorney and would not have attempted to breach the contract and that in fact it would not have been broken.

At the conclusion of this statement, the court, apparently relying upon the theory that the action for rescission was brought upon the advice of the attorney whom the buyers consulted and that this in-

sulated, in some way, the acts of defendants, granted a motion to dismiss the case on the ground that, if the facts stated in the opening statement were proved, they would not justify recovery.

The only question here is whether the court correctly ruled that the opening statement of counsel precluded a recovery.

■ A motion for a dismissal upon an opening statement is rarely granted and then only when facts are deliberately conceded which, if proved, would negate a right to recover. The applicable rule is stated in Johnson v. Larson, 234 Minn. 505, 510, 49 N. W. (2d) 8, 11, as follows:

"* * * A dismissal at the close of plaintiff's opening statement is rarely granted, and the power to dismiss in such a case is to be sparingly exercised. * * * Such motion is only granted in those cases where counsel has deliberately conceded facts which, if proved, would not entitle plaintiff to a verdict, and then only after counsel has been given every opportunity to qualify, explain, and amplify his statements."[1]

A litigant has a right to waive an opening statement entirely if he chooses to do so and is not compelled to state all the facts he intends to prove. It is only when he deliberately concedes facts which, if proved, would defeat his right to recover that a dismissal may be granted on such statement.

■ In passing upon such motion, every doubt as to the facts and every inference permissible from the opening statement is to be resolved in favor of the party making the statement.[2]

Defendants cite many authorities pertaining to a dismissal or a directed verdict after plaintiff's evidence has been submitted. These authorities are not in point. The question is whether plaintiff should not have been permitted to submit his evidence, not whether the evidence when submitted was sufficient to establish a cause of action. There is no need to distinguish the cases cited.

---

[1]See, also, Barrett v. Minneapolis, St. P. & S. S. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047, 18 L.R.A. (N.S.) 416; St. Paul Motor Vehicle Co. v. Johnston, 127 Minn. 443, 149 N. W. 667; Mahutga v. Minneapolis, St. P. & S. S. M. Ry. Co. 182 Minn. 362, 234 N. W. 474; Plotkin v. Northland Transp. Co. 204 Minn. 422, 283 N. W. 758.

[2]Best v. District of Columbia, 291 U.S. 411, 54 S. Ct. 487, 78 L. ed. 882.

■ The right to recover against one who procures a breach of contract has been exhaustively annotated in Annotations, 84 A. L. R. 43 and 26 A. L. R. (2d) 1227. Some of the statements found in the earlier annotation are quoted with approval in Johnson v. Gustafson, 201 Minn. 629, 277 N. W. 252. There is no need of repeating them here. The general rule stated in Wolfson v. Northern States Management Co. 210 Minn. 504, 507, 299 N. W. 676, 678, is as follows:

"* * * It is the settled law of this state that wrongful interference with the contract relations of others causing a breach is a tort; [cases cited]; and that wrongful and malicious interference by a stranger with contract relations existing between others, causing one to commit a breach thereof, amounts to an actionable tort and that an action against a party to the contract for a breach thereof is not the exclusive remedy but the wrongdoer may be pursued. [Case cited.] This court held in Sorenson v. Chevrolet Motor Co. 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35, that when a person has knowledge of the contract rights of another and wrongfully induces a breach thereof, such inducement constitutes the destruction of a property right and is actionable."[3]

■ Here the action is brought not by one of the contracting parties but by one who had an interest in the continued performance of the contract. The right to recover is not necessarily limited to one of the contracting parties. Intentional interference with a relationship from which a legally enforceable benefit flows is actionable by the party who is damaged by such interference.[4]

■ In plaintiff's opening statement, counsel proposed to establish that he had legally enforceable benefits accruing out of a performance of this contract; that defendant Lundorff was thoroughly familiar with such rights and, as a matter of fact, was to act as the agent for the parties in collecting and disbursing payments made on the contract, including payments to plaintiff; and that, with such knowledge, Lundorff in-

---

[3] See, also, Joyce v. G. N. Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A. (N.S.) 756; Mealey v. Bemidji Lbr. Co. 118 Minn. 427, 136 N. W. 1090; Royal Realty Co. v. Levin, 244 Minn. 288, 69 N. W. (2d) 667.

[4] Miller v. Monsen, 228 Minn. 400, 37 N. W. (2d) 543; Bitzke v. Folger, 231 Wis. 513, 286 N. W. 36.

tentionally interfered with the performance of the contract, causing a breach thereof and consequent damage to plaintiff.

It is true that no one could be held liable for advising another to consult an attorney when in need of legal advice or assistance, if that were all that was done, but here plaintiff stated that he would prove that the buyers went to see an attorney as part of a plan to breach this contract conceived by defendants and consummated as a result of such plan. Consulting an attorney and prosecuting an action to rescind were only one link in a chain of events which plaintiff claims defendants were responsible for, all of which resulted in a breach of contract that would not have occurred if it had not been for defendants' interference. Assuming that these facts can be established, the chain of causation would not necessarily be broken merely because, as part of the overall plan, an attorney was brought into the picture. The question then is: Was the interference of defendants the proximate cause of the breach?

In the opening statement counsel said that if it had not been for defendants' wrongful interference the buyers would not have gone to an attorney; they would not have brought an action to rescind; nor would they have breached the contract. If these facts are proved, an inference is permissible that defendants' wrongful interference was the proximate cause of the breach. It follows that it was error to dismiss the action on the opening statement.

Reversed.