June E. HANLEY, Judy Blair, Donna Dietrich, Harlene Scott, Patricia Patrone, Denise Bova, Cynthia Dini, Jeff Hodgers, and Seerie Southwick, individually and as Class Representatives, Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., a corporation and Union of Flight Attendants, an unincorporated labor organization, Defendants.

Civ. A. No. 88–C–161.

United States District Court, D. Colorado.

June 1, 1988.

Martin D. Buckley, Berenbaum & Weinshienk, Denver, Colo., for plaintiffs.

Donald P. MacDonald, and Mark E. Brennan, Hornbein, MacDonald & Fattor, Denver, Colo., Jay D. Roth, Ira L. Gottlieb, and Miriam Lopez, Taylor, Roth, Bush & Geffner, Los Angeles, Cal., for Union.

John M. Husband, and Allen Taggart, Holland & Hart, Denver, Colo., and Joseph L. Manson, III, William H. Crispin, and Nancie G. Marzulla, Verner, Liipfert, Bernard, McPherson & Hard, Washington, D.C., for Airline.

## ORDER

CARRIGAN, District Judge.

Plaintiffs Hanley, Blair, Dietrich, Scott, Patrone, Bova, Dini, Hodgers, and Southwick, commenced this action for themselves and on behalf of a purported class consisting of all persons employed as flight at-

tendants by Continental Airlines, Inc. ("Continental") prior to October 15, 1986. They allege two claims for relief against Continental and the Union of Flight Attendants (the "Union"). Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1337(a).

The complaint alleges: In August 1986, Frontier Airlines, Inc. ("Frontier"), a commercial air carrier based in Denver, Colorado, permanently ceased operations and furloughed all of its employees. Four days later, Frontier and its parent company, Frontier Holdings, Inc., filed, in the Bankruptcy Court for this district, a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Texas Air Corporation ("TAC"), Continental's corporate parent, subsequently entered into an agreement with People Express, Inc. ("People"), the corporate owner of Frontier Holdings, Inc., under which TAC would acquire certain Frontier assets subject to specified conditions.

In October 1986, Continental, People, Frontier, and a coalition of labor organizations representing Frontier's furloughed employees, including its flight attendants, entered into a series of agreements intended to facilitate the prompt creation of job opportunities for those Frontier employees who desired to join Continental, and to facilitate the prompt return to active airline service of Frontier's assets. Those agreements are collectively referred to as the "Frontier-Continental Job Preservation and Litigation Settlement Agreement," or the "JPA." After the bankruptcy court approved the JPA on October 17, 1986, approximately 400 unemployed former Frontier flight attendants elected to accept employment with Continental pursuant to the JPA's terms.

The complaint further alleges that under the JPA, there was an understanding that the then-current employees of Continental would not be disadvantaged in their employment rights through the addition of the former Frontier employees to Continental's employment rolls. According to the complaint:

"[T]he JPA provided that, in integrating the former Frontier employees into the Continental work force, special notice would be taken of the fact that Frontier had gone out of business and that its former employees had little prospect of reemployment in the airline industry. Practically speaking, that meant that the seniority standing of Continental's flight attendants would not be diminished. Plaintiffs and the class they represent were among the intended third party beneficiaries of this provision in the JPA."

(¶ 21.)

The complaint adds that in April 1987, Continental and the Union entered into an agreement captioned "Memorandum of Understanding" that sought to establish procedures for integrating the former Frontier flight attendants' seniority into the Continental flight attendant seniority list. The Memorandum of Understanding was signed by Continental, the defendant Union, three former Frontier flight attendants acting as the Frontier Airlines Flight Attendants Seniority Integration Committee, and by two of the three flight attendants chosen by the Union to comprise the Continental Flight Attendants Seniority Integration Committee ("Continental Committee"). The three members of the Continental Committee were appointed by Union officers. None of the Continental Committee members was a Denver-based flight attendant.

The complaint further alleges that the Memorandum of Understanding led to a settlement agreement ("Integration Agreement") between the defendant Union and Continental in August 1987. Pursuant to the Integration Agreement, former Frontier flight attendants were, for the most part, integrated into the Continental flight attendants' seniority list based on their date of hire with Frontier. This type of seniority integration is referred to as "dovetailing." In contrast is "endtailing," which occurs when former employees from one company are integrated into the seniority list of another company based on their date of hire with the new company.

Plaintiffs contend that the Integration Agreement severely disadvantaged Conti-

nental's flight attendants, particularly those based in Denver. More specifically, the plaintiffs allege that approximately 83% of the former Frontier flight attendants were placed in better seniority positions at Continental's Denver flight attendant base than the seniority positions they previously had held at Frontier. Correspondingly, the plaintiffs assert, more than 80% of Continental's Denver-based flight attendants who were hired prior to October 15, 1986, now hold relatively worse seniority positions at Continental's Denver base than they had held before the Integration Agreement was implemented.

The first claim for relief asserts that the defendant Union, as the exclusive bargaining representative for all Continental flight attendants, "tortiously interfered with the rights of the plaintiff class to the full enjoyment of their rights as intended third party beneficiaries of the protections provided in the JPA, of which the [Union] had full knowledge." (Complaint. ¶ 33.)[1] The second claim for relief alleges that the defendant Union, through the two seniority committees, breached the duty of fair representation it owed to the plaintiff class when it "arbitrarily and intentionally" adopted the integrated seniority list.[2]

Currently pending is the defendant Union's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that it fails to state a claim upon which relief may be granted. In reviewing the sufficiency of a complaint when tested by a motion to dismiss, I must accept as true the complaint's allegations and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiffs have al-

leged no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Defendant Union contends that the first claim for relief must be dismissed because the plaintiffs have not alleged that the Union was a party to the contract that it allegedly breached. The second claim must be dismissed, the Union argues, because as a matter of law the Union did not breach the duty of fair representation owed to the plaintiffs. The parties have briefed the issues and oral argument would not materially assist my decision. I shall discuss these contentions in the order just presented.

### A. *Tortious Interference with Contractual Relations.*

Defendant Union contends that because it was not a party to the JPA, the plaintiffs cannot sue the Union for breach of the JPA. Clearly, the Union has misconstrued the language of the complaint, for the plaintiffs do not assert that the Union breached the JPA. Rather the first claim for relief alleges that the Union tortiously interfered with the plaintiff's rights under the JPA. More specifically, the plaintiffs contend that they are intended third party beneficiaries of the JPA, and that the Union's Integration Agreement with Continental tortiously interfered with the plaintiffs' contractual rights under the JPA.

■ To prove a claim of intentional interference with contractual relations, a plaintiff must demonstrate: (1) the existence of a valid contract between the plaintiff and a third party; (2) knowledge by the defendant of the contract or knowledge of facts that should lead it to inquire regarding existence of the contract; (3) intent by the

---

1. Plaintiffs' first claim for relief also alleges that Continental breached the JPA in depriving the members of the plaintiff class of the protections contained in the JPA with respect to their seniority positions.

2. Plaintiffs request the following: (1) a declaration that the Integration Agreement is void; (2) a permanent injunction barring Continental and the Union from giving any force or effect to the integrated seniority list constructed in accordance with the Integration Agreement; (3) a

mandatory injunction directing Continental specifically to perform its obligation to the plaintiff class under the JPA; (4) a permanent injunction barring the Union from interfering with the plaintiff class' enjoyment of their rights under the JPA; (5) an order directing the defendants to reimburse the plaintiff class for their costs of suit, including reasonable attorneys' fees; and (6) such other and further relief as the court deems appropriate.

defendant to induce or cause the third party not to perform; (4) action by the defendant that induces or causes non-performance of the contract; and (5) resulting injury or damages to the plaintiff. *Henderson v. Times Mirror Co.,* 669 F.Supp. 356, 362 (D.Colo.1987).

As a preliminary matter, I conclude that the complaint adequately alleges facts in support of the last four elements of the tort of interference with contractual relations. Specifically, the complaint alleges that: (1) the Union had knowledge of the JPA prior to the Integration Agreement; (2) in negotiating, accepting and implementing the Integration Agreement, the Union "knowingly deprived the Continental flight attendants as a class of the seniority protections they received under the JPA"; (3) the Union interfered with the JPA when it executed the Integration Agreement; and (4) the Integration Agreement severely disadvantaged the plaintiffs' seniority rights. *See* Complaint, ¶ 33 ("[s]ince seniority governs monthly bidding for flight schedules and work assignments, the compensation and working conditions of the plaintiffs have been adversely affected by their loss of seniority").

A more difficult issue is whether the complaint adequately alleges facts in support of the first element of tortious interference with contractual relations, *i.e.* the existence of a valid contract between the plaintiffs and a third party. It is undisputed that none of the plaintiffs was a party to the JPA. Nevertheless, the plaintiffs assert that "[a]s third-party beneficiaries of the seniority protection provisions of the JPA, plaintiffs are entitled to recover in tort if some third party interferes with the contract and thereby prevents the plaintiffs from reaping the benefits of the contract." (Response, at 10.)

■ A corollary issue is whether the plaintiffs indeed are intended third party beneficiaries under the JPA. "[T]he right of a third party to sue on a contract made for [its] benefit requires that the right be apparent from the express provisions of the contract...." *Gallagher v. Continental Insurance Co.,* 502 F.2d 827, 833 (10th Cir.1974). The benefit cannot be incidental but must be a direct benefit intended by the contracting parties to accrue in favor of the third party. *Id.*

Plaintiffs argue that they are intended third party beneficiaries under the JPA because it guaranteed that their seniority would not be diminished through employment by Continental of the approximately 400 former Frontier flight attendants. (¶ 24.) Plaintiffs insist that this guarantee was clearly intended to benefit the plaintiffs and their class.

However, the plaintiffs have not produced for this court, as an attachment to either their complaint or to their response to the motion to dismiss, the actual contract language upon which they rely to support this contention. Nonetheless the issue of whether a person is an intended third party beneficiary is, at least partially, a question of fact, and, as stated above, the facts alleged in the complaint must be taken as true for purposes of this motion to dismiss. Moreover, the defendant Union does not contend in its motion to dismiss that the plaintiffs are not intended third party beneficiaries of the JPA. Thus for purposes of this motion, I will consider the plaintiffs as intended third party beneficiaries of the JPA.

■ Thus I must decide the question of whether an intended third party beneficiary under a contract has standing to assert a claim for the tort of intentional interference with contractual relations. Unfortunately, neither the parties' research, nor mine, has revealed any Colorado case that has expressly decided this issue.

However, other courts have indicated that an intended third party beneficiary may assert a claim for intentional interference with its third party rights. *See, e.g., Tamposi Assocs., Inc. v. Star Market Co.,* 119 N.H. 630, 406 A.2d 132 (1979) ("[a] third party beneficiary may recover from one who intentionally interferes with the contract that established the third party's rights"); *Reynolds v. Owen,* 34 Conn.Sup. 107, 380 A.2d 543, 546 (1977) ("[a]s a third-party beneficiary, the plaintiff possesses the requisite contractual rights to bring a

cause of action in tort"); *Bitzke v. Folger*, 231 Wis. 513, 286 N.W. 36, 40 (1939) ("[i]n so far as the Laundry Company had and was enjoying the benefits of at least some contract rights, an intermeddler's malicious interference with performance thereof constituted an actionable violation"). Moreover, neither party has cited any case holding to the contrary.

Furthermore, the rationale supporting the tort of intentional interference with contractual relations applies with equal force to intended third party beneficiaries as to parties who actually signed the contract. The tort is aimed at those who intentionally and improperly interfere with rights created by a contractual *relationship*. Indeed, a historical form of the tort did not even require existence of a contract. As noted by a leading authority on torts:

> "One form of the tort now known as inducing breach of contract or interference with contract can be traced back to very ancient times when it was not the existence of a contract which was important, *but the status, or relation recognized by the law, in which the parties stood toward one another*, and with which the defendant interfered." W.P. Keeton, et al., *Prosser and Keeton on the Law of Torts*, § 129, at 979 (5th ed. 1984) (emphasis added; footnote omitted).

Additionally, Comment p. to the Restatement (Second) of Torts § 766 provides the following example:

> "[I]f A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employers or suppliers, are not within the scope of the protection afforded by [the tort of interference with contract] *unless A intends to affect them*" (emphasis added).[3]

Thus I conclude that an intended third party beneficiary to a contract may assert a claim for tortious interference with contractual relations to recover for intentional and improper interference with its rights under that contract. I accordingly deny the motion to dismiss the first claim for relief.

### B. *Breach of Duty of Fair Representation.*

■ A union, as the exclusive bargaining representative of employees in a bargaining unit, has a statutory duty to represent fairly all of the employees in that unit. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). However, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. Notably, however, in *Barton Brands, Ltd. v. NLRB*, 529 F.2d 793, 799 (7th Cir.1976), the court declared that proof of good faith on the part of a union is not a defense to a charge based on the duty of fair representation since arbitrary conduct without evidence of bad faith may constitute a breach of the duty of fair representation. Still, "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Humphrey v. Moore*, 375 U.S. 335, 349, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964).

Plaintiffs contend that the defendant Union breached its duty of fair representation owed to the Continental flight attendants when it executed the Integration Agreement with Continental. More specifically, the plaintiffs assert that by dovetailing the seniority lists, the Union arbitrarily and intentionally adopted a seniority integration policy that severely disadvantaged the Continental flight attendants, and conferred disproportionate benefits on the former Frontier flight attendants. Plaintiffs add that:

> "[T]he Union, through hand-picked committees, negotiated, agreed to, and implemented a seniority integration that is so

---

**3.** Courts applying Colorado law have followed the Restatement (Second) of Torts § 766. *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47 (10th Cir.1963); *Comtrol, Inc. v. Mountain States Telephone and Telegraph Co.*, 32 Colo. App. 384, 513 P.2d 1082 (1973).

implausible given the circumstances of Frontier's demise ... that it exceeds the bounds of reasonable latitude ordinarily accorded a union charged with accommodating competing interests within the group it represents. The Union's role in designing, controlling, and implementing the procedure for accomplishing the seniority integration constitutes the sort of arbitrary course of conduct which violates the duty of fair representation." (Response, at 15.)

■ Generally, a union's acquiescence to dovetailing seniority of employees from one company into another company's seniority list does not constitute a breach of that union's duty of fair representation owed to the employees already working for the latter company. This situation typically arises where two companies have merged. For example, in *Kesinger v. Universal Airlines, Inc.*, 474 F.2d 1127, 1130 (6th Cir.1973), flight crew members alleged that their union breached its duty of fair representation when it adopted a merger plan that integrated seniority lists. The Sixth Circuit affirmed the district court's dismissal of the action, reasoning:

> "[T]he mere fact that the integration of a seniority list is detrimental to one group of employees, and favorable to another, does not establish that the union has breached its duty of fair representation if it has integrated the list in good faith and not on grounds totally irrelevant to seniority."

In another case where seniority lists were integrated following a merger, the Ninth Circuit stated:

> "[W]ithin this context, it is almost inevitable that some individuals will be injured, and that even where the same union represents both bodies of employees, it does not breach its duty to individual members as long as it proceeds on some reasoned basis." *Clayton v. Republic Airlines*, 716 F.2d 729, 732 (9th Cir.1983).[4]

The general rule to be gleaned from *Kesinger, Clayton*, and other cases, is that a union does not breach its duty of fair representation when it agrees to dovetailing seniority lists as long as the union acts reasonably and not arbitrarily in doing so. Thus the issue at this stage in the present action is whether the complaint adequately alleges that the defendant Union acted unreasonably or arbitrarily when it agreed to dovetailing the former Frontier flight attendants' seniority into the Continental flight attendant's seniority list.[5]

■ Plaintiffs assert that the Union clearly acted unreasonably and arbitrarily when it: (1) improperly delegated the task of achieving a fair and equitable seniority integration to a committee that lacked any Denver-based representation; and (2) agreed to dovetailing rather than other available fair and equitable means of integration. Plaintiffs also place great emphasis on the fact that Frontier had ceased operations and had filed a petition in bank-

**4.** In *Barton Brands, supra*, 529 F.2d at 800, the Seventh Circuit declared that a union must show some objective justification for abridging the established seniority rights of a minority of the employees in the bargaining unit. In the present action, however, it appears undisputed that the plaintiffs, and the class they seek to represent, constituted a majority of the employees affected by the seniority integration agreement.

**5.** In *Beardsly v. Chicago & North Western Transp. Co.*, 836 F.2d 1493 (8th Cir.1988), the court explained the difficult task confronting a union in a merger situation:

> "First, the employees of the acquired company face the personally devastating prospect of losing long-standing valued seniority rights and, more importantly, of losing jobs. In such a period, displaced employees are likely to force the representatives of their local and international unions into pressure tactics to force the acquiring company into some sort of an accommodation, both in terms of rights to hire and job seniority.

> \* \* \* \* \* \*

> "On the other side of the coin, the incumbent employees of the acquiring companies are likely to feel threatened by the hiring of new employees with advanced seniority rights and are likely to demand some sort of firm assurance, both in terms of their job status and vested seniority rights.

> "To settle these conflicts, a common and well-established practice in acquisitions or mergers is to engage in some sort of dovetailing of seniority." *Id.* at 1506.

ruptcy prior to Continental's employment of the former Frontier flight attendants.

As further support for their assertion that the Union acted unreasonably when it agreed to dovetailing the seniority lists, the plaintiffs rely on an arbitrator's resolution of a similar dispute between the Continental pilots and their union. In a decision dated June 15, 1987, Arbitrator George Nicolau specifically rejected dovetailing of the former Frontier pilots' seniority into the Continental pilots' seniority list. Nicolau ruled that date-of-hire seniority was contrary to the JPA and inappropriate under the circumstances of the acquisition by Continental of Frontier's assets after Frontier had ceased operations and filed for bankruptcy. Plaintiffs quote the reasoning of the arbitrator:

> " 'It is significant that the Frontier pilots brought no jobs as such to the merger. Lacking that key element, it would not at all be appropriate, particularly in light of the JPA, to approve an EDOH [effective date of hire] integration. The dovetailing embodied in Frontier's proposed list ... symmetrically balances the two lists by seniority, but in so doing presupposes conditions that don't exist and wholly ignores the JPA's commands. The very different conditions here, and the strictures of the JPA make other mergers and the "usual" guidelines largely irrelevant.' " (Response, at 14 (*citing* Arbitrator Nicolau's Award, at p. 46)).

In sum, the plaintiffs contend that "[b]y failing to assert the rights of Continental flight attendants and by agreeing to date-of-hire seniority which directly contradicts the JPA and the Nicolau decision, instead of proceeding to arbitration, the Union clearly acted in a perfunctory and arbitrary manner." (Response, at 18.)

While I am mindful of the general rule that dovetailing does not usually constitute a breach of the duty of fair representation, the facts surrounding this case render it somewhat unusual. Unlike *Kesinger* and *Clayton* this case does not involve a merger of two functioning companies. As observed by Arbitrator Nicolau in the pilots' case, the integrated employees did not bring jobs to the merger. Additionally, for purposes of this motion to dismiss, I must accept the plaintiffs' allegation that the dovetailing agreement is contrary to the JPA's commands. Furthermore, there has been no answer yet filed, and the defendant has not furnished affidavits or other evidence, upon which to base a finding that the Union acted reasonably in agreeing to the dovetailing. Therefore, on the present record, I cannot conclude as a matter of law that the Union's acquiescence to dovetailing the flight attendants' seniority lists was not unreasonable or arbitrary under the circumstances.

Accordingly, IT IS ORDERED that:

(1) Defendant Union of Flight Attendants' motion to dismiss the claim for tortious interference with contractual relations is denied;

(2) Defendant Union of Flight Attendants' motion to dismiss the claim for breach of the duty of fair representation is denied; and

(3) Defendant Union of Flight Attendants shall file an answer to the complaint within 11 days.